### B. V. NIXON v. THE STATE.

*No. 469. Decided October 26.*

1. **Theft—Proof of Theft of Other Property.**—It is competent for the State, on a trial for theft, to introduce evidence of the theft of other property than that alleged in the indictment to have been stolen, provided such other property was found in possession of the defendant when arrested, and tended to establish identity in developing res gestæ, or in making out the guilt of the accused by circumstances connected with the theft, or to explain the intent with which the accused acted with respect to the property for the theft of which he is being tried.

2. **Same—Systematic Crime.**— On a trial for theft, when the prosecution proposes to show systematic crime, subsequent as well as prior offenses tending to establish identity can be put in evidence, and the time of the collateral inculpatory facts is immaterial, provided they be close enough together to indicate that they are part of a system. Hennessy v. The State, 23 Texas Court of Appeals, 340, followed.

**3. Same—When Inadmissible.**—See case where it was held error to admit evidence of the fact that defendant, some three weeks prior to the time of his arrest for theft of the horse alleged to have been stolen in the indictment, had been in possession of and had sold other horses stolen from another person, at a different time and place, and which evidence in no manner tended to illustrate the crime for which he was on trial, and was not admissible to show systematic crime.

Appeal from the District Court of Bexar. Tried below before Hon. G. H. Noonan.

This appeal is from a conviction for the theft of a horse, alleged to be the property of one D. A. McCaskell. At the trial defendant was found guilty, and his punishment assessed at confinement in the penitentiary for a term of five years.

McCaskell, the alleged owner, testified: That on 29th March, 1892, he lived some ten miles from the town of Lockhart, in Caldwell County, Texas, and that on that day he lost a bay mare and a dark brown or black 2-year-old colt, which he had turned out on the range the day before. That he knew the defendant; had become acquainted with him at the District Court, in the month of March before his horses were stolen. That when he found his horses were missing, he started out to hunt them, and was told by two negro boys that they saw a man in possession of the animals on the road leading from his neighborhood to San Antonio, and their description of the man suited the description of defendant. That he followed on to San Antonio, where he found his horses in possession of, and got them from, one J. D. Petty. That it was about sixty miles from his place to San Antonio.

J. D. Petty, testified: That he was a horse dealer, and lived in San Antonio, and that he bought the two horses, which the witness McCaskell afterwards got from him, from the defendant on the 30th day of March. He paid the defendant $30 for the animals, and the defendant gave him a bill of sale, which was produced and read in evidence.

Fred. Love, testified: That on the morning of the 29th of March, while working in his field, near the San Antonio road, about a mile and a half west of the San Antonio River, he saw a man driving several horses, and amongst them a bay, and a black colt. The defendant suits the description of the man he saw, but he would not undertake to say that he was the man. About an hour after this man passed with the horses, the witness McCaskell came along, and my two boys described the man and animals to him, and he followed on after them.

Joe Baxter, for the State, testified: That he lived in San Antonio; was a horse trader, and was in partnership in the business with one Ed. Pfefferling. That Pfefferling bought a horse from defendant on the 5th day of March, 1892, for $15. That the horse was branded WK; and that defendant gave them a bill of sale for it. That the horse was after-

wards claimed by a negro named John Talley; and the witness produced and read in evidence a bill of sale given to Pfefferling for said horse.

John Talley testified: That he lived in Caldwell County, Texas; knew the defendant for several years; had lived in the same neighborhood with him. On the 3d of March, 1892, witness had two horses stolen from him—one a brown bald-faced horse, branded WK, and one a sorrel, branded JO on the hip. He recovered one of the horses in San Antonio from Ed. Pfefferling, and the other from one George Graham, in Bexar County.

Thomas Edwards, for defendant, testified: Had known defendant, and had lived near him for many years, in Caldwell County. That on the 29th of March, 1892, in Hays County, Texas, he saw a Mexican riding along near the San Antonio road, leading an animal which belonged to defendant, and the witness described the Mexican.

Dutch Carter, for defendant, testified: That he knew defendant, and saw him on the 29th of March, 1892, on York's Creek, in Hays County, Texas, and saw him make a horse trade with a Mexican. I know the horses claimed by McCaskell in this case. The horses I saw the defendant trade for on that day suit the description of the McCaskell horses. A bay mare and a black or brown 2-year-old colt. George Dunning was present at the trade.

On cross-examination, this witness stated that he and defendant were to meet at York's Creek that day, and go to Hunter Station to gamble with a Mexican who was going to open up a game there. I was "kinder" sporting around. Don't know what day of the month the 4th of July comes on. Don't know how many days there are in July, March, January, or June. Don't know when the months come. Don't know what month this is or the day of the month. I know I saw the defendant make the trade I refer to on the 29th of March. Don't know whether the horses sold by defendant in San Antonio on March 30 are the same ones I saw him with on York's Creek or not.

George Dunning testified to his being present at a horse trade between defendant and a Mexican, on York's Creek, on the 29th of March, defendant getting a bay mare and a brown or black colt in the trade. The horses defendant traded for answered the description of the McCaskell horses. Amongst other things, this witness, on cross-examination, said: "I will not swear that I am alive, or that I was ever born. I might swear positively that I am alive, but I wont swear positively to anything else. I wont swear positively that I ever saw Nixon (defendant) or the Mexican on York's Creek. Don't know what month this is, or what day of the month the 4th of July comes on. Don't know if March came this year before or after April. I am not certain that I am here. I believe I am certain that I am living. I believe that is all I can be certain about."

Defendant, as a witness in his own behalf, testified to his having traded

for the McCaskell horses from a Mexican, on York's Creek, and that Dutch Carter and George Dunning were present.   He brought the horses all the way along the public road to the city of San Antonio.   That he brought them into the city in the daytime, and never undertook to conceal them or himself.   That he sold them to a Mr. Petty, who knew him.   Did not tell Jim McCluskey that no one was present at the time I traded for the horses with the Mexican.

Jim McCluskey, deputy sheriff, for the State, testified:   That he arrested the defendant for the theft of McCaskell's horses.   Had a conversation with him in the sheriff's office, and defendant said that he had got the horses in a trade with a Mexican, and that no one was present at the time of the trade.

Defendant's bill of exceptions No. 1 shows that he objected to the entire testimony of the witness John Talley, with regard to the theft of Talley's horses.   His second bill of exceptions was taken to the testimony of James McCluskey, deputy sheriff; the objection urged to this testimony being that defendant was under arrest at the time, and was not warned, as the law provides, before making the statement as sworn to by the witness.

In qualifying this bill, the court explains that the evidence was admitted for the purpose of impeaching the defendant as a witness in his own behalf, a proper predicate having been fully laid.

Defendant's third bill of exceptions relates to the action of the court in allowing, over defendant's objections, certain questions propounded by the district attorney, with regard to the sale and purchase by him of the defendant of a mare and colt, on the 30th of April, which were proven away from him by McCaskell, the objection urged being, that the testimony related to the theft of other horses taken at a different time and place from the horses alleged to have been stolen in the indictment.

The third ground of defendant's motion for a new trial was, " because the court erred in permitting State's counsel to show by witnesses other supposed thefts committed by defendant, not at the same time and place of the alleged theft in this cause.   And this same ground of error is repeated substantially in the fifth ground of defendant's assignment of errors.

No briefs either for appellant or the State have come into the hands of the Reporter.

DAVIDSON, JUDGE.—Appellant was convicted of the theft of a horse, the property of one McCaskell.   On the trial the State was permitted to prove that defendant was in possession of and sold in the city of San Antonio other stolen horses, the property of one Talley, about three weeks prior to the date of the theft of the horses set out in the indictment in

this case. Appellant's objection to this evidence was overruled, and he duly reserved his bill of exceptions.

This testimony was not admissible. "When necessary to establish identity in developing the res gestae, or in making out the guilt of the accused by circumstances connected with the theft, or to explain the intent with which the accused acted with respect to the property for the theft of which he was being tried, it was competent for the State to prove that other property was stolen at or about the same time, and from the same neighborhood from which the property in question was stolen, and that this other property was found in possession of the defendant when arrested for the theft of the property for which he is on trial." House v. The State, 16 Texas Ct. App., 25; Kelley v. The State, 18 Texas Ct. App., 262; Holmes v. The State, 20 Texas Ct. App., 509; Alexander v. The State, 21 Texas Ct. App., 407; Harwell v. The State, 22 Texas Ct. App., 251; Whart. Crim. Ev., secs. 31, 48, et seq.

"When the object is to show system, subsequent as well as prior offenses, when tending to establish identity or intent, can be put in evidence. The question is one of induction, and the larger the number of consistent facts the more complete the induction is. The time of the collateral inculpatory facts is immaterial, provided they be close enough together to indicate that they are part of a system." Hennessy v. The State, 23 Texas Ct. App., 340; Morgan v. The State, ante, p. 1; Whart. Crim. Ev., sec. 38. This testimony did not tend to identify any fact or circumstance which could aid in developing the res gestæ, nor did it tend to prove system between the offense on trial and that introduced, nor did it develop a criminative fact or circumstance against defendant in relation to the case then on trial, nor did it explain a relative or competent fact or circumstance pertaining to the theft of the horses charged in the indictment. Whart. Crim. Ev., sec. 48. Defendant was on trial for theft of McCaskell's horses, shown to have been committed on the night of March 29, ten miles northwest of Lockhart, whereas the testimony objected to proved possession by defendant of Talley's horses in San Antonio on the 5th of March, after they had been stolen on the night of March 3, eight or nine miles east of Lockhart. This testimony does not come within any of the rules authorizing admission of evidence of extraneous crimes and offenses. For the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.