## M. E. GRAY v. THE STATE.

No. 3499.  Decided April 28, 1915.

Rehearing granted June 9, 1915.

#### 1.—Abortion—Indictment—Statutes Construed—Common Law.

That clause of article 1071, Penal Code, defining the offense of abortion which was added to the article by the Act of 1907, defining what is meant by the term "abortion," was not intended to restrict the definition of abortion, but to add to it instead, and to prevent the common law construction of that term which formerly existed, and where the indictment followed the statute in all particulars, except the inclusion of said latter clause of said article, the same is sufficient.

#### 2.—Same—Indictment—Statutes Construed.

Where the indictment for abortion, tested by articles 451, 453, 460, 461 and 474 of the Code of Criminal Procedure, was sufficient, there was no error in overruling the motion to quash the same, because it failed to allege the latter clause of article 1071, Penal Code, towit, that by reason of the means applied to the person upon whom the abortion was performed, the life of the fetus or embryo in the womb was destroyed, or that a premature birth from the womb was caused.

#### 3.—Same—Rule Stated—Indictment.

As a rule it is never necessary in the indictment to allege the offense by defining the meaning of the several words in the statute, although prescribed by the statute itself.

**4.—Same—Sufficiency of the Evidence—Pregnancy—Circumstantial Evidence.**

Where, upon trial of abortion, the evidence, although circumstantial, was sufficient to sustain the conviction, and showed that the person upon whom the abortion was committed was pregnant at the time the defendant committed the various acts which constituted the offense of abortion, and the court gave a proper charge on circumstantial evidence requiring the jury to find the prosecutrix was pregnant at the time, there was no reversible error on that ground.

**5.—Same—Evidence—Other Offenses—Intent.**

Where, upon trial of abortion, there was no evidence offered or introduced which tended to prove other than that the acts which defendant performed were with the intention of producing an abortion, if the prosecutrix was pregnant, testimony which tended to show and from which the jury were authorized to believe that the defendant produced abortions on other women, both before and after the acts committed by defendant upon the prosecutrix .in the instant case, was inadmissible and reversible error, as the issue that there might be no guilty intent was not involved. Following Bowman v. State, 70 Texas Crim. Rep., 22, and other cases. Prendergast, Presiding Judge, dissenting.

**6.—Same—Accomplice—Charge of Court.**

The woman upon whom an abortion is committed is not an accomplice, and the evidence did not show that another State's witness was an accomplice, and there was therefore no error in the court's failure to charge upon accomplice testimony. Following Fondren v. State, 74 Texas Crim. Rep., 552.

**7.—Same—Cross-examination—Charge of Court.**

Where upon trial of abortion the defendant on cross-examination of a State's witness sought to show ill-feeling and hostility to defendant, and brought out the fact that defendant was not desired in the community, not because she was a negro, but because she was a character, there was no error in the court's refusal to charge the jury not to consider the testimony to the effect that defendant was a professional abortionist.

**8.—Same—Bill of Exceptions.**

Where the bill of exceptions was insufficient to require this court to pass upon the question as to hearsay testimony, the matter could not be reviewed; besides, the matter was withdrawn from the jury. Following Best v. State, 72 Texas Crim. Rep., 201; Miller v. State, 31 Texas Crim. Rep., 609, and other cases.

**9.—Same—Requested Charge—Objections to Charge of Court.**

Where, upon trial of abortion, no objections whatever were made to the court's charge, and no charge was requested submitting the issue of an attempt to produce abortion, there was no reversible error.

**10.—Same—Evidence—Other Offenses—Intent.**

Where the only reasonable deduction from the evidence, upon a trial for abortion, is that it does not raise the issue that the defendant at the time she performed the operation on prosecutrix knew that the latter was not pregnant, and only performed the operation to bring about a flow of the menses, but the evidence showed that the act she performed was done to cause a flow of the menses to bring about an abortion, if prosecutrix was pregnant, and no evidence was introduced which tended to prove other than that the acts which defendant performed were with the intention of producing an abortion, if the prosecutrix was pregnant, testimony that defendant produced abortions on other women, both before and after the act committed by her on the prosecutrix, was inadmissible and reversible error. Following

Harris v. State, 55 Texas Crim. Rep., 469, and other cases. Prendergast, Presiding Judge, dissenting.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. L. Crawford, Jr.

Appeal from a conviction of abortion; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Nelms, E. J. Gibson, Chas. A. Pippen,* and *Allen & Flanary,* for appellant.—On question of insufficiency of the indictment: Strickland v. State, 19 Texas Crim. App., 518; Parker v. State, 9 id., 351; Hunt v. State, 9 id., 404; Huntsman v. State, 12 id., 619; Kerry v. State, 17 id., 178; Pierce v. State, 17 id., 232; Fondren v. State, 74 Texas Crim. Rep., 552, 169 S. W. Rep., 411.

On question of insufficiency of evidence of pregnancy: Griffith v. State, 9 Texas Crim. App., 372; Loza v. State, 1 id., 488.

On question of other offenses: Bink v. State, 89 S. W. Rep., 1075; Davenport v. State, 89 S. W. Rep., 1077; Denton v. State, 60 S. W. Rep., 670; Clark v. State, 59 Texas Crim. Rep., 246, 128 S. W. Rep., 131; Nunn v. State, 60 Texas Crim. Rep., 86, 131 S. W. Rep., 320; Pitts v. State, 60 Texas Crim. Rep., 524, 132 S. W. Rep., 801; Skidmore v. State, 57 Texas Crim. Rep., 497, 123 S. W. Rep., 1129; Pridemore v. State, 59 Texas Crim. Rep., 563; Harris v. State, 55 id., 476; Miller v. State, 59 id., 249; Johnson v. State, 57 id., 488; James v. State, 138 S. W. Rep., 612; Bowman v. State, 155 S. W. Rep., 939.

On question of failure of court to charge on accomplice testimony: Watson v. State, 9 Texas Crim. App., 237.

On question of withdrawal of legal testimony: Durham v. State; Schwen v. State, 35 S. W. Rep., 172; Haney v. State, 122 S. W. Rep., 34; Welhausen v. State, 30 Texas Crim. App., 623; Drake v. State, 29 id., 265; Skeen v. State, 51 Texas Crim. Rep., 39.

*C. C. McDonald,* Assistant Attorney General, and *Mike T. Lively,* County Attorney, for the State.—On question of other offenses to show intent: Street v. State, 7 Texas Crim. App., 5, and cases cited in dissenting opinion.

On question of the sufficiency of the indictment: Reum v. State, 49 Texas Crim. Rep., 125; Link v. State, 73 Texas Crim. Rep., 82, 164 S. W. Rep., 987; Fondren v. State, 74 Texas Crim. Rep., 552, 169 S. W. Rep., 411, and cases cited in dissenting opinion.

PRENDERGAST, PRESIDING JUDGE.—Appellant was indicted, and convicted of abortion. Prior to the Act of March 20, 1907, amending article 1071 (641) of our Penal Code, the offense of abortion, as applicable to this case, was thus defined: If any person shall designedly use toward a pregnant woman with her consent any violence, or means whatever, externally or internally applied and shall thereby procure an

abortion, he shall be punished, etc. Said Act of 1907, re-enacted said article, making no change therein applicable hereto, except it added a separate paragraph in these words:

"By the term 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the mother's womb, or that a premature birth thereof be caused."

So that the offense applicable herein by said statute, leaving out the unnecessary matters, is in this language: If any person shall designedly use toward a pregnant woman, with her consent, any violence or means whatever, externally or internally applied, and shall thereby procure an abortion, he shall be punished by confinement in the penitentiary not less than two nor more than five years. By the term "abortion" is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused.

The indictment in this case has more than one count. The trial court, however, restricted the case to the second count. After the other necessary averments in every indictment said count is as follows:

That M. E. Gray, on March 12, 1913, "did unlawfully, wilfully and designedly make an assault in and upon the person of one Sadie Moore, a pregnant woman, and did then and there, with the consent of the said Sadie Moore, insert, thrust and force into the private parts and womb of the said Sadie Moore a certain rubber instrument, towit, a catheter, then and there calculated to produce an abortion and miscarriage of her, the said Sadie Moore; and that by the means aforesaid she, the said M. E. Gray, did then and there produce an abortion of the said Sadie Moore of the child wherewith she, the said Sadie Moore, was then and there so pregnant."

Appellant's contention is that this indictment is fatally defective because it fails to allege that by reason of the means applied to said Mrs. Moore "the life of the fetus or embryo in the womb was destroyed, or that a premature birth from the womb was caused."

A careful review of the authorities indicates that at common law an abortion could not be produced upon a woman, unless and until the child was "quick" within her womb. The courts of our various States differ as to this, most of them holding that an abortion can be produced at any time after conception and before the woman was "quick" with child. We, of course, do not know for certain why our Legislature added said clause to article 1071 quoted above, as it did, unless it be for fear that the courts of this State might hold that an abortion could not be produced on a woman, unless she was "quick" with child as contradistinguished from being pregnant, and the stage of pregnancy only embracing the early stages of the embryo or fetus. As we understand this addition to this article, it was not intended, and should not be construed, to restrict the definition of abortion, but to add to it instead, and to prevent that construction of the article as it formerly existed in the particulars mentioned.

In testing the sufficiency of an indictment under our law we must

necessarily be governed largely, if not wholly, by our codes.  Of course, there are general principles which are also applicable.

Now let us look to these statutory provisions:  Article 451, subdivision 7, Code of Criminal Procedure, in prescribing the requisites of an indictment, says:  "The offense must be set forth in plain and intelligible words."  Article 453 says:  "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."  These articles were incorporated in our Code when originally enacted in 1856.  The tendency of the courts, then, and for some time afterwards, was to construe indictments strictly.  So much so that the Legislature by the Act of March 26, 1881, page 60, undertook by legislative enactment to do away with this strict construction and by that Act added, among others, articles 460, 461 and 474.  By article 460 it is enacted that an indictment "shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged and enable the court on conviction to pronounce the proper judgment."  And then further says certain words in no case are necessary.

Article 461 is:  *"When a statute creating or defining an offense uses special or particular terms an indictment on it may use the general terms which in common language embraces the special terms."*

Article 474 is:  "Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning or which include the sense of the statutory words."

Tested by these statutes, we think it clear that the indictment in this case is sufficient as drawn, and that it is not fatally defective in that it does not contain the additional averments which appellant contends it should have contained.  We are not holding that it may not have been proper to add, under the special facts of this case, what appellant contends for.  It may be that that allegation would not have been improper.  What we hold is that the indictment, as written, is sufficient.  We think the indictment, as written, is unquestionably of that certainty which will enable the accused to plead the judgment herein given upon it in bar of any other prosecution for the same offense.  Also that it charges the offense in such ordinary and concise language as to have enabled appellant or any other person of common understanding to know what is meant, and to give her notice of the particular offense with which she was charged and to enable the court to pronounce the proper judgment of conviction.

We also think that the special or particular language defining what the word "abortion" means is clearly embraced in the general terms used in the indictment and that the general terms used embraces the special or particular definition embraced by the addition to the article in the

Act of 1907; and that the general words used in the indictment include the special terms in the law added by the Act of 1907 and include the sense of the whole of the statutory words.

We have many statutes prescribing offenses in given words and language and then some words in the statute making the offense, are defined. As we understand, as a rule, it is never necessary in the indictment to allege the offense by defining the meaning of the several words in the statute, although prescribed by the statute itself. Take, for instance, our manslaughter statute (art. 1128, P. C.); it says, "manslaughter is voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law." Then follow articles defining certain words and terms used. Thus, defining what is meant by "under the immediate influence of sudden passion." Then defines "adequate cause" and prescribes some of the things which are adequate cause and some which are not. It has never been held necessary and we think could not be, that an indictment for manslaughter should specifically allege what the terms and words used in the statute mean as defined and described by other provisions.

"Pregnancy is defined with reference to a woman as the state of being with child and is used to designate the condition of a woman from the moment of conception until she has been delivered of the child." 1 Corpus Juris., 312; 1 A. & E. Ency. of Law & Prac., p. 116. "Pregnancy extends from the whole period from the earliest conception to the actual expulsion of the fetus." State v. Howard, 32 Vt., 380.

In 1 A. & E. Ency. of Law & Prac., p. 113, it is said: "Abortion is the act of miscarrying or producing young before the actual time and before the fetus is perfectly formed; and to cause or procure an abortion is to cause or procure this premature bringing forth of the fetus. Though the word does not of itself import a crime, and does not always occur in the statutes, yet it has become a term of legal classification and is now generally if not universally used to designate the crime of causing the premature bringing forth of the human fetus, so far as that act is a crime at common law or has been made so by statute."

In 1 Standard Ency. of Proc., p. 94, it is said: "The word 'abortion' in common terminology means the premature delivery of a human fetus.

"'By abortion we understand the act of miscarrying, or producing young before the natural time, or before the fetus is perfectly formed. And to cause or produce an abortion is to cause or produce this premature bringing forth of this fetus.'

". . . The crime of abortion under modern statutes is the unlawful act of causing a woman to miscarry or abort, through the use of artificial means."

Appellant next contends that the evidence was insufficient to sustain the verdict in that the evidence fails to show that said Mrs. Moore was pregnant at the time the appellant committed the acts that she was shown to have committed towards her. We have carefully read and studied the statement of facts. Of course, it was necessary for the

State to prove that Mrs. Moore was pregnant at the time. The court, in his charge on this point, gave a correct charge on circumstantial evidence and in accordance therewith required the jury to believe specifically that said Mrs. Moore was pregnant at the time, before they could convict and if the jury had a reasonable doubt of it to acquit her. We can see no useful purpose in stating the testimony. In our opinion, it was amply sufficient to meet the requirements of a charge on circumstantial evidence and from it the jury could find, as they did, that Mrs. Moore was pregnant at the time.

Over appellant's objections the court permitted the introduction by the State of the testimony of Mrs. Duke, Mrs. Selby, E. J. Erwin, and W. B. Roddy to facts which would tend to show, and from which the jury were authorized to believe, that the appellant produced abortions on other women, both before and after the acts committed by her upon the said Mrs. Moore.

It is unquestionably the rule in this State, established by all the textbooks and a great many decisions of this court, that ordinarily evidence of extraneous or other crimes are inadmissible; that an accused must be tried alone for the crime with which he is charged and that it is not admissible to prove him guilty in a given case by proving that he is a criminal generally, or committed other like crimes. See sec. 338, Branch's Cr. Law, where some of the cases are collated. Appellant, however, recognizes that proof of such extraneous crimes are admissible when they tend to show intent, knowledge, etc. There can be no question but that whenever knowledge and intent are necessary to be shown, evidence of extraneous crimes tending to show or showing this is admissible.

Our statutes create some offenses where intention or knowledge is not material. In most crimes, however, intention and knowledge are not only essential but must be proven. Under our law, if there is any crime more than another which requires that knowledge and intent is necessary, it occurs to us that that offense is the offense of abortion. Intent and knowledge are the very gist of the offense of abortion.

Mr. Bishop says in the crime of abortion the evil intent "is an element indispensable to the offense." Bish. on Stat. Cr., sec. 747, p. 749. In 1 A. & E. Ency. of Law & Prac., p. 146, it is said: "Intent, being an essential ingredient of the crime (abortion) must be proved." As we understand, all authorities hold that this is essential. It is unnecessary to collate them.

It is perfectly manifest from the record in this case and the statement of facts that appellant's contention, to prevent conviction, was twofold: first, that said Mrs. Moore was not pregnant and that appellant did not know it if she was, and, second, that the acts she performed upon her were solely and simply for the innocent purpose and intention of bringing on the suppressed menses of Mrs. Moore under the belief that she was not pregnant. With the issues thus drawn there can be no doubt but that it was absolutely essential on the part of the State to introduce proof of any and all pertinent facts that would show or

tend to show both knowledge of Mrs. Moore's pregnant condition and appellant's evil intention of producing an abortion upon her.

In 7 Ency. of Ev., p. 627, it is said: "In all cases in which the guilty knowledge or intent of a party in the act or transaction in question is an essential element, evidence of other general acts or offenses committed by such party or in which he bore a part, and happening at or about the same time, is relevant and competent to show intent,"— citing, besides English decisions, and from the United States Supreme Court, the decisions of thirty-nine of the other States of the United States.

1 Whart. on Cr. Ev., after laying down the general rule that proof of collateral offenses are inadmissible, in section 31, says: "Certain exceptions exist, however, to the rule just stated," and then he enumerates nine specially, among them is (3) to prove scienter or guilty knowledge; (4) to prove intent. To the same effect see sec. 1126, Bish. New Cr. Proc.; also 1 Greenl. on Ev., sec. 53; 1 Jones on Ev., sec. 143; 1 Wigmore on Ev., sec. 302; 4 Chamberlayne on Ev., sec. 3222; Underhill on Ev., sec. 89. In fact, every other text-book writer on the subject of evidence lays down and applies the same rule.

Mr. Underhill, in section 89, says: "Another exception to the rule occurs when the intention present in an act is material. Thus, suppose the question is, was a given act, either by the accused, or by some other person, intentional or accidental? Here it is relevant to prove that the person whose intention is in question had performed acts of a precisely similar nature either before or after the act the intention of which is in question. And if it be found that he has performed many such acts, we have the best of grounds for drawing the conclusion that the act, in the present instance, is intentional and not accidental. So where the commission of an act alleged to be a crime is admitted by the accused but he denies that he intended to commit it or alleges that he did it without guilty knowledge his doing similar acts, wholly independent and unconnected with that under investigation is relevant to show intention."

Jones on Evidence, vol. 1, p. 725, in the latest edition of his work, after laying down and discussing the rules as stated, says:

"Formerly there was a clear distinction made between two classes of cases: (1) Where the intent with which an alleged offense was committed is equivocal, and such intent becomes an issue at the trial, proof of the commission of other similar offenses, within certain reasonable limits, is admissible, as tending to throw light upon the intentions of the accused in doing the act complained of; (2) where from the nature of the offense under inquiry, proof of its commission as charged carries with it the evident implication of a criminal intent, evidence of the perpetration, or attempted perpetration, of other like offenses will not be admitted. That distinction does not appear to have been warranted, and the more modern law may be taken to be that, notwithstanding there may be other proof of intent in the case, rendering evidence of another crime unnecessary, yet the prosecution is not thereby debarred

from making all the proof possible on the subject, and consequently, in such a case, may introduce evidence of the other crime."

Almost every one of the above text-books specifically state that such evidence of other crimes are admissible in a case of abortion.

Our statute (art. 1, C. C. P.), in stating the object of the Code, says: "It seeks . . . (4) to bring to the investigation of every offense on the trial all the evidence tending to produce conviction or acquittal."

That such independent crimes are admissible to prove intent and knowledge has been held and applied in a great many of the decisions of this court. In fact, we know of no decision of this court where the contrary is held. Persons v. State, 3 Texas Crim. App., 240; Francis v. State, 7 Texas Crim. App., 501; Jones v. State, 14 Texas Crim. App., 85; Martin v. State, 28 Texas Crim. App., 364; Street v. State, 7 Texas Crim. App., 5; Gilbraith v. State, 41 Texas, 567; Cesure v. State, 1 Texas Crim. App., 19; Fore v. State, 5 Texas Crim. App., 251; Davidson v. State, 12 Texas Crim. App., 214; House v. State, 16 Texas Crim. App., 25; Taylor v. State, 22 Texas Crim. App., 529; Nixon v. State, 31 Texas Crim. Rep., 205; Ware v. State, 36 Texas Crim. Rep., 597; Reese v. State, 44 Texas Crim. Rep., 34; Wyatt v. State, 55 Texas Crim. Rep., 73; Glasson v. State, 37 Texas Crim. Rep., 620; Kaufman v. State, 70 Texas Crim. Rep., 438. The court gave appellant's special charge properly limiting for what purpose the jury could consider the testimony of said witnesses.

In our opinion the testimony of all the witnesses objected to was clearly admissible.

It has been so many times decided by this court that the woman upon whom an abortion is committed is not an accomplice, that we regard the question as settled. Hunter v. State, 38 Texas Crim. Rep., 61; Miller v. State, 37 Texas Crim. Rep., 575; Willingham v. State, 33 Texas Crim. Rep., 98; Watson v. State, 9 Texas Crim. App., 237; Fondren v. State, 74 Texas Crim. Rep., 552, 169 S. W. Rep., 411. Mrs. Rob. Moore was not an accomplice and no charge thereabout was necessary or proper.

As shown by the record, the appellant, on cross-examination of Mr. Reynolds, the sheriff, sought to show his ill-feeling and hostility to appellant in order to discredit his testimony against her, and in cross-examination on the point had him testify that he, with the other white people in his community, resented the fact that appellant had bought a place in their community and moved into it,—"not because she was a negro but because she is a character." The court, therefore, did not err in refusing to charge the jury not to consider the said sheriff's testimony to the effect that she was a professional abortionist, the court explaining that the testimony on the subject was brought out and introduced by appellant.

Appellant's bill No. 12, after the style and number of the cause and the usual "be it remembered," states "that when the prosecuting witness, Mrs. Streeter Moore, was giving her testimony she was permitted

to testify in answer to a question propounded by the State's counsel that she, the witness, heard before she went to the defendant that the defendant performed abortions." This is, in substance, the whole of the bill, except the objections to said testimony which followed. Under all the rules this bill is too meager and insufficient to require the court to pass upon the question. James v. State, 63 Texas Crim. Rep., 75; Conger v. State, 63 Texas Crim. Rep., 312; Best v. State, 72 Texas Crim. Rep., 201, 164 S. W. Rep., 996. The trial judge in approving this bill, qualified it by stating that while he at first admitted the testimony over appellant's objections, he "gave to the jury a special instruction to disregard the same and not to consider said testimony for any purpose whatever." We find in the record a special charge to the jury telling them that said testimony "was improperly admitted in evidence and you are instructed that you must not consider said testimony for any purpose, nor permit your verdict to be influenced thereby," given at appellant's request. The court erred in admitting this testimony, but under the circumstances and the facts shown in this case, having given said special charge, the error of the court does not require a reversal. Miller v. State, 31 Texas Crim. Rep., 609; Hatcher v. State, 43 Texas Crim. Rep., 237; Robinson v. State, 63 S. W. Rep., 869; Trotter v. State, 37 Texas Crim. Rep., 468; Jones v. State, 33 Texas Crim. Rep., 7; Morgan v. State, 31 Texas Crim. Rep., 1; Sutton v. State, 2 Texas Crim. App., 342; Roberts v. State, 48 Texas Crim. Rep., 210; Martoni v. State, 74 Texas Crim. Rep., 64, 167 S. W. Rep., 349. Especially as the statute now is, the said charge withdrawing said testimony was given to the jury before any argument of the case.

Appellant made no objection whatever to the court's charge. The court did not submit to the jury for a finding the offense of an attempt to produce abortion. Appellant requested no charge whatever upon the subject. She now claims that the omission of the court to so charge is fundamental error. Under the proper construction of the Act of April 5, 1913, page 278, amending certain articles of the Procedure, we think appellant's contention is wholly untenable. We have so held in a large number of cases since said amended act went into effect. We deem it unnecessary to collate them or further discuss the question.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—I can not agree to this affirmance. There are several serious errors. I may write on rehearing.

ON REHEARING.

June 9, 1915.

HARPER, JUDGE.—The writer agreed to an affirmance of this case on a former day of this term, but a more thorough study of the record has convinced him that he was in error in so doing on one proposition,

and that is, there was no error in admitting testimony that appellant had produced or attempted to produce an abortion on other and different people than the person charged in this indictment. In the original opinion it is stated: "It is perfectly manifest from the record in this case, and the statement of facts, that appellant's contention, to prevent conviction, was twofold: first, that said Mrs. Moore was not pregnant and that appellant did not know it if she was, and, second, that the acts she performed upon her were solely and simply for the innocent purpose and intention of bringing on the suppressed menses of Mrs. Moore under the belief that she was not pregnant." If this was the correct construction to place on the record and evidence, then the opinion would be correct beyond question, to our minds; for if the State shows one to have committed an act forbidden by law, and as a defense to such act the person on trial makes a defense that if he in fact did the acts alleged by the State, he did so innocently or by mistake, then proof of other similar offenses is admissible to rebut the proof of innocent intent or mistake. After a renewed study of the record we have become convinced that the evidence offered by appellant tended only to show that Mrs. Moore was not pregnant at the time she committed the act complained of, and this was the defense relied upon. The evidence shows that Mrs. Moore had passed her menstrual period some seven or eight days, and she was fearful that she was pregnant. That she went to appellant to have this condition remedied. Appellant requested her to wait a month and see if her menstruation would not return without an operation. This Mrs. Moore declined to do, and insisted upon appellant performing the operation. We think the evidence demonstrates appellant did so for the purpose and with the intent, if Mrs. Moore was pregnant, to produce an abortion. This, we have come to the conclusion, is the only reasonable deduction from the evidence before us, and it does not raise the issue that she, at the time she performed the operation, knew that Mrs. Moore was not pregnant, and only performed the operation to bring about a flow of the menses. But the acts performed were done to cause a flow of the menses in order to bring about an abortion if Mrs. Moore was pregnant. There is, to our mind, no evidence offered or introduced that tended to prove other than that the acts which appellant performed were with the intention of producing an abortion if Mrs. Moore was pregnant. In the original opinion are quoted some opinions which hold that if the statute provides that in order to obtain a conviction, the State must show a guilty intention, other offenses which tended to show the intent of the person on trial would be admissible, even though the evidence offered by appellant did not raise the issues of mistake or innocent intent. We opine that the statutes of those States in which it was so held did not provide as does our Code, that "when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act," and "the intention to commit an offense is presumed whenever the means

used are such as would ordinarily result in the commission of the forbidden act." (Arts. 51 and 52, Penal Code.)

Under these provisions of the Code it is the rule in this State, that when an accused is shown to have committed an act prohibited by law, there must be some evidence adduced on the trial raising the issue that the act was committed with no intent to produce the result, or the intent will be presumed from the doing of the act which results in a violation of the law. In a case of theft, it must be shown that the property was taken with the intent to deprive the owner of its value, and with the intent to appropriate such property to the use and benefit of the person taking same. But it is only necessary to prove that the property was taken, and that the accused took it and had it in his possession. Under such a state of facts our law presumes the intent to deprive the owner of the value of it, and the intent to appropriate it to the use of the taker, unless the evidence elicited on the trial raises the issue that it was taken under a claim of right, by mistake, or some other innocent motive, showing a lack of intent to take and appropriate another's property. If the evidence raises such an issue, then evidence of similar offenses is admissible to rebut this evidence of innocent intent. In those cases which hold other offenses admissible, it is shown that it is only in those cases where the evidence adduced on the trial raised the issue that there might be no guilty intent that evidence of other offenses became admissible and for that reason. Gilbraith v. State, 41 Texas, 567; Long v. State, 11 Texas Crim. App., 381; Davidson v. State, 12 Texas Crim. App., 214; McCall v. State, 14 Texas Crim. App., 353; Holmes v. State, 20 Texas Crim. App., 509; Harwell v. State, 22 Texas Crim. App., 251; Kelly v. State, 31 Texas Crim. Rep., 211; Fielder v. State, 40 Texas Crim. Rep., 184; Stanfield v. State, 43 Texas Crim. Rep., 10; Lynne v. State, 53 Texas Crim. Rep., 375. On the other hand, it seems to be the well settled rule in this State, when the evidence adduced on the trial leaves no question as to intent of the accused in doing the act complained of, proof of other offenses, even though of similar character and kind, is not admissible on the issue of intent. Harris v. State, 55 Texas Crim. Rep., 469; Davenport v. State, 49 Texas Crim. Rep., 11; Clark v. State, 59 Texas Crim. Rep., 246, 128 S. W. Rep., 131; Bink v. State, 48 Texas Crim. Rep., 598, 89 S. W. Rep., 1075; Johnson v. State, 57 Texas Crim. Rep., 488; Miller v. State, 59 Texas Crim. Rep., 249.

Since the writer has been on the bench he had once before occasion to investigate this question (Bowman v. State, 70 Texas Crim. Rep., 22), and we there collated the decisions of this court, and held that proof of other offenses is not admissible to show intent, unless the evidence adduced on the trial renders it an issue in the case, and have again investigated the question, and our opinion thus expressed has been confirmed in view of the provisions of our Criminal Code, that the intent will be presumed when the means used are such as would ordinarily result in the commission of the offense complained of. In this case, from a re-reading of the record, we have come to the conclusion that the

sole defense relied on by appellant, as shown by the testimony, was that Mrs. Moore was not pregnant at the time she inserted the rubber catheter in her womb. There was no denial of the fact that the catheter would not produce an abortion if in fact Mrs. Moore was pregnant, and no evidence tending even to raise that issue.

Under such circumstances we are of the opinion the motion for rehearing should be granted, and the case reversed, and on another trial all evidence of other and different offenses excluded.

The motion for rehearing is granted, and the judgment is reversed and remanded.

*Reversed and remanded.*

PRENDERGAST, Presiding Judge (dissenting).—Before the original opinion was written I carefully read and thoroughly studied the evidence and record. I then reached the conclusion that appellant's contention in the trial court was, that she not only did not know that Mrs. Moore was pregnant when she performed the acts she did upon her, but also "that the acts she performed upon her were solely and simply for the innocent purpose and intention of bringing on the suppressed menses of Mrs. Moore and under the belief that she was not pregnant."

In considering the motions for rehearing, I have again more carefully read and thoroughly studied the evidence and record, if that can be, than when I wrote the original opinion, and I am confirmed and strengthened in my original opinion. My brethren, however, have reached the other conclusion. If they are right, of course the judgment should be reversed.

I do not propose to give any detailed statement of the evidence,—only sufficient of it to show how I reached the conclusion I did and why I adhere to it.

Mrs. Sadie Moore was the State's first witness. The substance of her testimony on direct examination was that on March 12, 1913, she had been married about three months. "It had been just a short while since my menstrual period,—about two weeks I reckon." That she knew appellant and went to her home and saw her there said date; that Mrs. Rob Moore (another Mrs. Moore) went out there with her. "I told her (appellant) what I wanted done; I told her I wanted an abortion. . . . She asked me how far I was and I told her about two weeks or ten days or something like that. There was something said about pay,—defendant said she charged $10 and I paid her. I then lay down on a couch and defendant used a catheter, a little rubber tube, and she inserted it into my womb. She put some cotton around the catheter. She left it in there. . . . The catheter remained inserted in my womb from about 11 o'clock one day until about 11 o'clock the next day, then I removed both the catheter and the cotton. . . . After the removal of the catheter and cotton I was sick; it was successful—my menstrual period I guess came from the womb after the removal of the catheter and cotton. There was also something else came from my womb, but not very much of anything—it looked like a little

old white substance, just very small, about the size of a dime. After this about two or three weeks I consulted with a physician—Dr. Nance; he came to my house and made an examination of my womb and put an ice bag on my side. I just wanted to have the doctor come and see me and tell him what I had done; I just kind of felt kind of bad and I thought there might be some inflammation there or something."

Appellant then took her on cross-examination and had her testify that she was nineteen years of age when she married and never had been married before; that she had never given birth to a child, was ignorant of all such matters when she went to see appellant and had never before been pregnant and knew very little about matters of that kind. "My regular menstrual period should have arrived along some time about the first of March and my period not arriving about that time, I became uneasy as to my condition. There was nothing in my condition that aroused my apprehension except the fact that I had missed my monthly period and I was not accustomed to missing it." That she first discussed her condition with said Mrs. Rob Moore, who was an older and longer married woman than she was, and told her about missing her menstrual period and the time; that Mrs. Rob Moore told her she could go out to appellant, and she went there mainly to see what her condition was, and told appellant the time she had missed her menses and that "I was worried about my menstruation, and asked her if she could do anything to cause the resumption of my menstruation or cause me to 'come 'round.' . . . She asked me how long I had passed my period and I told her all I knew about my condition was that I had missed my period. She told me that she would not make an examination of me or try to bring on my menstruation unless my husband requested her to do it." She said that she then phoned to her husband and he told her he would leave it with her; that defendant did not send for her but she voluntarily went to get the help of defendant to relieve her of the situation that was embarrassing her. "When I talked to defendant about this and after we had called up my husband, it seems to me she said something about my waiting until the next month to see if my period would not come around without doing anything." That she was very nervous and crying at the time and told defendant that if she was going to have it done she would rather have it done then. She further said that after the catheter was inserted in her womb and her womb packed with cotton and after it remained there about twenty-four hours it "produced the flow—more than usual." Appellant further had her testify: "At the time I went out to see defendant I thought I was pregnant but I did not know; I do not suppose that I could swear that I was; that I was absolutely certain about the matter, but I thought so then and still think I was."

On redirect examination she testified that she was living with her husband since she married him and that the ordinary relations between man and wife existed between them, and during the time within forty days preceding the time she discovered that her menstruation had ceased had had sexual intercourse with her husband.

On recross-examination appellant had her testify that she phoned Mrs. Rob Moore the day before March 12th and told her she thought she was pregnant. She said, "Mrs. Moore might have told me in this phone conversation that it was not unusual for a lady to go by her menstrual period," but she did not remember that she did; didn't remember telling her that she didn't know whether she was pregnant or not.

The next State's witness was said Mrs. Rob Moore. On direct examination she said that on said occasion, March 12, 1913, she went with Mrs. Sadie Moore to appellant's house and heard the conversation between appellant and Mrs. Sadie Moore; that Mrs. Sadie Moore wanted Mrs. Gray to examine her and she refused, and Mrs. Sadie Moore began to cry and beg her to, and Mrs. Gray said she would if Mrs. Moore would phone her husband; Mrs. Moore phoned her husband, and he was perfectly willing to go ahead, and then Mrs. Gray said she would. The horse hitched to the buggy in which these two ladies went to appellant's got loose and Mrs. Rob Moore said she went to catch the horse and did not see what appellant did to Mrs. Sadie Moore; that when she returned from catching the horse everything was over and Mrs. Sadie Moore was ready to go; that she knew that Mrs. Sadie Moore took some money with her, and thinks she paid defendant $10; that she thought Mrs. Sadie Moore was going to be sick and went over to Mrs. Sadie Moore's the next day to help her get dinner, found that she was up and just as cheerful as she had ever seen her.

On cross-examination appellant had Mrs. Rob Moore to tell that the day before, March 12th, Mrs. Sadie Moore told her she had passed her period some eight or nine days and that she asked her, the witness, to go out with her to appellant's to find out whether she was pregnant or not. She said, "I do not remember whether she just said it in that way or not, but she wanted to be examined. Mrs. Moore talked to me like she thought she was pregnant, and I tried to convince her that she was not, but she thought she was because she was so young and inexperienced; she just said she had passed her time eight or nine days and that was the only reason she thought she was pregnant. I explained to her that missing her period was nothing uncommon." That when she went over the next day to help Mrs. Sadie Moore with her dinner, she said: "It seems she said something to me about having menstruated but she said nothing about having aborted or delivered a child. . . . Just stated that her menstruation had come around all right and that she was all right; she never told me that there was anything unusual about the menstruation coming around or any unusual discharges." These two witnesses were the only ones other than appellant herself by whom the State could prove its case as to the immediate facts thereof.

I think the examination by the State and the direct testimony of both of these witnesses was for the sole purpose of showing that Mrs. Sadie Moore was pregnant and that the acts performed upon her by appellant were performed with the knowledge of that fact and with

no other intention than to produce an abortion. On the other hand, I think the cross-examination of both of these witnesses was not only for the purpose of attempting to show that Mrs. Moore was not pregnant, but especially to show that if she was, that she, appellant, did not *know* or *believe* it, for she had Mrs. Moore to testify that she herself, Mrs. Moore, did not *know*, but simply *believed or thought* she was pregnant, and had the other Mrs. Moore to testify that she tried to convince Mrs. Sadie Moore that she was not pregnant, but simply that her menses was suppressed for a few days, which was not an unusual, but simply an ordinary condition of married women. And that appellant performed the act she did, not to produce an abortion, but simply and solely for the innocent purpose and intention of bringing on her suppressed menses. From the course of the whole cross-examination of these two witnesses to my mind, it is the same as if the appellant had said to the trial court and jury: "I did not know that Mrs. Sadie Moore was pregnant,—I did not believe she was. What I did to her was with no intention or purpose to bring on an abortion, but was simply and solely to relieve the lady of her distress and bring on her suppressed menses; that her menses were not suppressed because of pregnancy but from some other cause, which was not unusual in women." This being the case, I believe the testimony of the other witnesses showing and tending to show that she had produced abortions on other women, both before and after, was clearly admissible.

I think there can be no doubt, not only that appellant made this contention and showed it both directly and by implication from her cross-examination of these witnesses, but that she could make it appear more or less plausible, for there can be no doubt and is none, to my mind, that if Mrs. Moore had not been pregnant that what appellant did to her would unquestionably have brought on her suppressed menses whatever the cause other than pregnancy. In other words, here was a woman with delayed or suppressed menses. What appellant did to her would bring on her suppressed menses, whether caused by pregnancy or some other cause. Then unquestionably what appellant did was an equivocal act. The State contended that the act was performed to bring on an abortion and with that intent only; the appellant contended that that was not true, but that what she did was done for the purpose of bringing on suppressed or delayed menses and with that intent and for that purpose only. To bring on her menses if not pregnant was not a crime but a commendable and innocent act. Hence, the application of the rule that testimony of her like acts upon other women showing that her intention was to bring on an abortion and not innocently bring on suppressed menses, was clearly admissible.

I think the judgment should be affirmed,—not reversed.