# Supreme Court of Texas

No. 24-0284

In re Marcus Silva,

*Relator*

On Petition for Writ of Mandamus

JUSTICE BLACKLOCK, joined by Justice Devine, concurring in the denial of the petition for writ of mandamus.

"No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In civil litigation, the Fifth Amendment's protection against self-incrimination operates as a privilege against discovery. *See Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995). The rules governing the assertion of discovery privileges in Texas courts are well-settled. *See* TEX. R. CIV. P. 193.3, 193.4. When the Fifth Amendment is invoked, these procedural rules protect witnesses from self-incrimination, but they also ensure that "[t]he witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The witness's "say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified." *Id.*

The rules require the party resisting discovery on the basis of a privilege to produce a privilege log that does not waive the privilege or divulge privileged information. TEX. R. CIV. P. 193.3(b). If, as may be the case when the Fifth Amendment is claimed, no such log can be produced without piercing the privilege, the rules do not contemplate automatic, blanket protection against all discovery based purely on the witness's "say-so." *Hoffman*, 341 U.S. at 486. Instead, the rules contemplate that "[i]t is for the court to say whether . . . silence is justified." *Id.* Thus, if the party seeking discovery objects to an assertion of the Fifth Amendment, and if the court has reason to suspect that a blanket, unexamined application of the privilege would conceal responsive information that is actually not privileged, then the court has the authority to inspect the materials *in camera* to determine the validity of the assertion of the privilege. TEX. R. CIV. P. 193.4(a).

In a perfect world, we could take parties at their word. But this is litigation, and for obvious reasons, "[a] blanket assertion of the privilege without inquiry by the court[] is unacceptable." *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980). *In camera* inspection, which divulges nothing to the opposing party or to the world, enables the court to make an informed ruling on the privilege and ensures that a party cannot unilaterally decide to withhold discovery without ever subjecting its claim of privilege to judicial scrutiny.

These basic rules of civil discovery have not yet been followed in this case, in either the trial court or the court of appeals. Because the court of appeals' opinion incorrectly suggests they need not be followed in this case and other cases like it, I disagree with the Court's decision

not to dispose of this mandamus petition in a way that vacates the court of appeals' opinion. However, because the outcome in the trial court may not have been correct either—and because Mr. Silva's atrocious treatment of his ex-wife during this litigation makes him a particularly unsuitable beneficiary of this Court's discretionary exercise of mandamus jurisdiction[1]—I concur in the Court's decision to leave in place the court of appeals' vacatur of the trial court's broad discovery order.

In my view, the matter should return to the trial court, which may use the discovery rules to conduct a more thorough inquiry into the Fifth Amendment questions, perhaps informed by *in camera* inspection of the documents themselves—rather than by speculation and surmise about their contents, which are all that is before this Court. Whether application of the procedural rules governing the assertion of privileges will ultimately yield the result either party seeks is not a question before this Court, and I express no view on it.

---

[1] The record contains several disturbing indications that, in addition to whatever genuine concern for his unborn child Marcus Silva may or may not have had, he has engaged in disgracefully vicious harassment and intimidation of his ex-wife Brittni during the course of their marriage's demise and during this litigation. I can imagine no legitimate excuse for Marcus's behavior as reflected in this record, many of the details of which are not fit for reproduction in a judicial opinion. Regrettable as this aspect of the case may be, it does not excuse Brittni or her lawyers from compliance with the usual procedural requirements for the assertion of discovery privileges—though she may have other defenses to discovery arising from Marcus's behavior. I write separately only because, irrespective of the troubling factual background of this case, the precedent created by the court of appeals' opinion should be undone because its error could infect future cases.

\* \* \*

"If anything, when a case involves a controversial issue, we should be especially careful to be scrupulously neutral in applying [the] rules." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 635 (2016) (Alito, J., dissenting). Justice Alito wrote those words in a case about abortion, and they are relevant again today in another such case.

Marcus Silva sued three of his ex-wife's friends, alleging they assisted his ex-wife in obtaining drugs used to abort the Silvas' unborn child during their marriage. Marcus subpoenaed his ex-wife Brittni, a non-party, seeking several broad categories of information regarding the pregnancy, the abortion, the abortion-inducing drugs, and her communications with her friends, the defendants. Relying on the Fifth Amendment and several other arguments, Brittni declined to produce any documents or to offer a privilege log. Marcus moved to compel. The trial court granted the motion, ordering Brittni to produce all responsive information despite her claim that doing so could expose her to criminal liability under both Texas abortion laws and the federal Comstock Act.

Brittni sought mandamus relief in the court of appeals, which granted relief and ordered the trial court to vacate its order compelling production. *In re Silva*, No. 14-23-00834-CV, 2024 WL 1514565, at \*5 (Tex. App.—Houston [14th Dist.] Apr. 9, 2024). The court of appeals did not review any of the responsive material *in camera*, and it appears that no court has yet done so. The court of appeals nevertheless held that Brittni is "privileged against providing responsive items for all seven of Marcus Silva's discovery requests" because "simply by producing such

4

evidence, relator would be constructing a chain of evidence that could link to her abortion-related prosecution." *Id.* at *4.

\* \* \*

Once a party claims a privilege against discovery, the party "seeking discovery may serve a written request that the withholding party identify the information and material withheld." TEX. R. CIV. P. 193.3(b). The withholding party must then provide a description of "the information or materials withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege." *Id*. 193.3(b)(1). Brittni declined to do so. It is of course conceivable, in the Fifth Amendment context, that merely describing responsive documents as contemplated by Rule 193.3(b) could itself amount to compelled self-incrimination in violation of the Fifth Amendment. The court of appeals took this view of Brittni's situation. It is hard to know whether that view is correct without knowing more about the documents, which is one reason the rules contemplate *in camera* inspection. But even so, the court of appeals took the additional step of authorizing Brittni not just to withhold a privilege log, but to withhold *all* responsive information without *any* further judicial inquiry—even though Marcus's discovery requests cast a far wider net than any legitimate Fifth Amendment concerns Brittni may have.

To begin with, the Fifth Amendment applies only when the witness has a "reasonable cause to apprehend danger." *Ohio v. Reiner*, 532 U.S. 17, 21 (2001). As a matter of law, Brittni does not have a reasonable cause to fear prosecution under Texas's abortion laws.

5

Texas's recently enacted abortion laws that might otherwise apply to Brittni contain clear provisions exempting from prosecution women who obtain abortions.[2] And Texas's longest-standing criminal prohibition on abortion,[3] which pre-dates *Roe v. Wade*, has for over a hundred years been subject to the Court of Criminal Appeals' repeated, unequivocal holding that "a woman who voluntarily submits to an abortion, or advises, encourages or procures it to be done, is not a principal offender nor accomplice." *Crissman v. State*, 245 S.W. 438, 438 (Tex. Crim. App. 1922); *see also Gray v. State*, 178 S.W. 337, 341 (Tex. Crim. App. 1915) ("It has been so many times decided by this court that the woman upon whom an abortion is committed is not an accomplice that we regard the question as settled.").

Next, even if we assume that Brittni has a "reasonable cause to apprehend danger" from prosecution under the federal Comstock Act— a tenuous assumption given the Act's desuetude, but perhaps not a tenuous assumption given the Act's text—Marcus's broad discovery requests seek information that far exceeds the scope of Comstock Act liability. The Comstock Act penalizes "[w]hoever knowingly uses the mails for the mailing . . . of anything declared by this section . . . to be nonmailable, or knowingly causes to be delivered by mail . . . or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or

---

[2] *See* TEX. HEALTH & SAFETY CODE §§ 170A.003, 171.065(b), 171.206(b)(1) (exempting pregnant women on whom an abortion is performed from criminal liability); TEX. PENAL CODE § 19.06(1) (same).

[3] TEX. REV. CIV. STATS. arts. 4512.1–.6.

disposition thereof." 18 U.S.C. § 1461. Articles declared "nonmailable" by the Act include:

> Every article or thing designed, adapted, or intended for producing abortion, or for any indecent or immoral use; and

> Every article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for producing abortion, or for any indecent or immoral purpose . . . .

*Id.* The Act also prohibits knowingly using an "interactive computer service . . . for carriage in interstate or foreign commerce" of "any drug, medicine, article, or thing designed, adapted, or intended for producing abortion, or for any indecent or immoral use." *Id.* § 1462(c).

The Comstock Act—whose continued vitality has not recently been tested—is concerned with the mailing, or the online interstate trafficking, of abortion-inducing drugs (as well as "obscene, lewd, lascivious, or filthy" substances, such as pornography). *Id.* § 1462(a), (b). Marcus's discovery requests, by contrast, are broadly written to cover *any* information regarding the pregnancy and the abortion. Like any litigant, Brittni has the right to assert objections to the breadth or relevance of these requests, or to make any of the many other objections available to her as a non-party served with a subpoena. But she cannot, based on nothing more than her lawyers' say-so, use the narrow way in which *some* of her responses *could* implicate her in a highly speculative Comstock Act prosecution as a reason not to provide *any* response *at all*.

The court of appeals suggested that merely acknowledging possession of an abortion-inducing drug would provide a "link in the chain" of evidence necessary for a Comstock Act conviction. *In re Silva,*

7

2024 WL 1514565, at *4. But if the Fifth Amendment protects parties in civil litigation from acknowledging the mere possession of any of the items whose mailing is outlawed by the Comstock Act, then there could scarcely ever be any civil litigation regarding the abortion industry or the pornography industry. That cannot be the rule. A party who merely acknowledges possession of an otherwise lawful substance does not have reasonable cause to apprehend danger from a Comstock Act prosecution premised on the substance's illicit transportation through the mail or over the internet.

Finally, even if I am wrong on these points—that is, even if Brittni has a legitimate fear that merely acknowledging the existence of any responsive materials would incriminate her in violation of the Fifth Amendment—the proper result would *still* not be the blanket, unexamined assertion of privilege sanctioned by the court of appeals. The correct course, instead—if the trial court suspects the assertion of privilege may be unfounded, as was clearly the case here—is *in camera* inspection of the allegedly privileged material so that a neutral arbiter can analyze the claim of privilege with reference to the documents at issue. That has never happened in this case. When "a party asserting privilege claims makes a prima facie showing of privilege and tenders documents to the trial court, the trial court must conduct an in camera inspection of those documents before deciding to compel production." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004); *see also* TEX. R. CIV. P. 193.4(a) ("If the court determines that an *in camera* review of some or all of the requested discovery or required disclosure is

8

necessary, that material or information must be segregated and produced to the court . . . .").

Whether the Fifth Amendment protects a party from divulging documentary evidence is a question best answered with reference to the documents at issue. Because the court of appeals' opinion forecloses that pathway by authorizing the blanket withholding of all responsive materials based on the Fifth Amendment, I object to the Court's decision to dispose of this mandamus petition in a way that does not vacate the court of appeals' opinion. Of course, no party should take this Court's action as agreement with the court of appeals' opinion. I nevertheless concur in the Court's decision not to disturb the court of appeals' vacatur of the trial court's broad discovery order. Unlike the court of appeals, I would send the parties back to square one in the trial court, as described herein.

James D. Blacklock
Justice

**OPINION FILED:** June 21, 2024