facts and bills of exceptions and went to the county attorney's office to submit them to him, made several trips for that purpose, but found on inquiry that the county attorney was absent in either Houston or Galveston. The affidavits do not in any way show that he attempted to communicate with him at either of these points, nor do the affidavits show when he returned. When he could not find the county attorney, he took the papers to the county judge and asked him to act upon them, but the county judge declined to do so until the county attorney had passed on them. It is further shown that on the 19th day after adjournment of the court, he did see the county attorney, and asked him to then pass upon his statement of facts and bills of exceptions, but the county attorney claimed that he was busy and could not do it that day, but would take them up later. He at that time left these papers with the county attorney. He did not then again present them to the county judge, and they were not presented to the county judge for any action again until September 12, 1913. It appears that they were on that day, and not before, signed, agreed to, and filed. This was on the 27th day after the adjournment of court. Under the uniform holding of this court, this does not show such diligence as is required by the statute and the decisions. Under the law we cannot consider these papers. Jones v. State, 163 S. W. 75; Bryant v. State, 35 Tex. Cr. R. 394, 33 S. W. 978, 36 S. W. 79; Bell v. State, 31 Tex. Cr. R. 521, 21 S. W. 259.; Gowan v. State, 164 S. W. 6, recently decided, but not yet officially reported; Riojas v. State, 36 Tex. Cr. R. 182, 36 S. W. 268; Durham v. State, 155 S. W. 222. It is needless to cite the many other cases to the same effect.

The motion for rehearing is overruled.

---

## KIRKLIN v. STATE.

(Court of Criminal Appeals of Texas. March 18, 1914.)

1. HOMICIDE (§ 166*)—EVIDENCE—MOTIVE.
    Where, at the time of a homicide, defendant was unaware of the issuance of a marriage license authorizing the marriage of deceased and defendant's divorced wife, evidence of the issuance of the license was not admissible against defendant as showing motive.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 320–331; Dec. Dig. § 166.*]

2. WITNESSES (§ 406*) — CONTRADICTION OF WITNESS.
    Where, in a homicide case, a witness had testified that deceased had made a threat against defendant and stating that he then had in his pocket a marriage license to marry defendant's divorced wife, evidence of the date of the issuance of the license was admissible as tending to discredit the witness.
    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1276–1279; Dec. Dig. § 406.*]

3. HOMICIDE (§ 309*)—INSTRUCTIONS—MANSLAUGHTER.
    Where, in a charge on manslaughter, the court undertakes to enumerate the circumstances that would conduce to show adequate cause and consequent passion, he should enumerate all the circumstances.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 649, 650, 652–655; Dec. Dig. § 309.*]

4. HOMICIDE (§ 309*)—INSTRUCTIONS—MANSLAUGHTER.
    In instructing upon manslaughter, it is sufficient usually to charge in a general way that the jury should look to all the facts and circumstances occurring before and at the time of the homicide that were explanatory of the condition of defendant's mind, or tend to throw light upon its condition at the time of the killing.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 649, 650, 652–655; Dec. Dig. § 309.*]

5. HOMICIDE (§ 300*) — INSTRUCTIONS — SELF-DEFENSE.
    Where, in a homicide case, the evidence was that deceased was standing on a sidewalk in a city and defendant approached and fired one shot. the contention of the state being that defendant walked up to deceased and shot him, and that of defendant being that, as he approached, deceased ran his hand in his pocket, it was error to instruct upon the cessation of the right of self-defense.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614, 616–620, 622–630; Dec. Dig. § 300.*]

6. HOMICIDE (§ 300*)—INSTRUCTIONS—SELF-DEFENSE.
    In a homicide case, an instruction that it was the duty of the jury to determine from the evidence what was the standpoint of defendant and in what light he did, in fact, view the situation, was erroneous, since the criterion of self-defense in apparent danger is always as it appeared to defendant at the time he acted, and not as viewed by the jury in the light of subsequent events.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614, 616–620, 622–630; Dec. Dig. § 300.*]

7. HOMICIDE (§ 190*)—EVIDENCE—UNCOMMUNICATED THREATS.
    Where, in a homicide case, the issue was as to who began the difficulty, uncommunicated threats made by deceased were admissible.
    [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 399–413; Dec. Dig. § 190.*]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Frank Kirklin was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Lattimore, Cummings, Doyle & Bouldin, of Ft. Worth, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, J. Appellant was convicted of murder in the second degree; his punishment being assessed at 10 years' confinement in the penitentiary.

[1, 2] He objected to the introduction of the date of the marriage license which the clerk issued authorizing the marriage of the deceased and the divorced wife of appellant.

---

This license was dated 12th of February. The witness Mason testified to uncommunicated threats made by deceased in regard to appellant, which threats, he says, occurred two or three days prior to the homicide. The homicide occurred on the 13th of February, and license was issued on the 12th of February. Appellant was unaware of the issuance of the license at the time of the homicide. It therefore could not be introduced against him on the question of motive. If it was introducible at all, it was introducible for the purpose of attacking the credibility of the witness Mason. The witness Mason testified that deceased, when he made the threats with reference to appellant, stated that he (Slayton) then had in his pocket a marriage license to marry the widow of appellant. The court limited this testimony to the credibility of Mason. For that purpose we are of opinion it was introducible. Mason had testified to the statement of deceased that he had a marriage license to marry the widow of appellant, some days prior to the issuance of the license. This would tend to impress the jury that Mason may have fabricated this testimony with reference to threats and the statement of the deceased. We are of opinion, for that purpose, that the date of the marriage license was introducible, and the court was correct in so limiting the testimony, and in fact would have been in error had he refused to do so. It could not be used against defendant, because it would be supplying a motive for the killing of the deceased, which could not be imputed because appellant was not aware of the issuance of the license. The testimony also shows, in this connection, that appellant was engaged to remarry his divorced wife at the time of the killing, and that there was also an engagement between her and Slayton to marry. Appellant was aware of the fact that there was a contemplated marriage between deceased (Slayton) and his wife, for he had been so informed by his divorced wife's mother; but he was not aware of the fact that the license had been issued.

[3, 4] There are quite a lot of exceptions to the court's charge on manslaughter. These, we think, are not of sufficient importance to require a reversal of the judgment. Upon another trial, however, if the court undertakes to enumerate the circumstances that would conduce to show adequate cause and consequent passion, he should enumerate all the circumstances. While it may not be necessary to single out and collate these circumstances, yet, where the court undertakes to do so, none of them must be omitted. The charge in this respect is subject to criticism, for the court informed the jury in this respect they could look to the previous acts and conduct of the deceased and the demeanor at the time of the homicide, and other circumstances, "such as communicated threats." Uncommunicated threats were in the case also. While uncommunicated threats would not be admissible to show the condition of defendant's mind, so far as manslaughter is concerned, yet it might have the effect of inducing the jury to believe deceased was moving towards defendant at the time of the shooting for the purpose of inflicting personal injury upon him, or to execute his threats. It will be sufficient, usually, to charge, in a general way, that the jury should look to all the facts and circumstances occurring before and at the time that were explanatory of the condition of defendant's mind, or tend to throw light upon its condition at the time of the killing.

[5] The charge of the court is sharply criticised with reference to self-defense. In the charge, among other things, the court authorizes the shooting from the standpoint of apparent danger, and, without quoting the full charge in this connection, he closes the paragraph by stating: "In this connection, you are instructed that one who is unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant, but has the right to stand his ground, and even to advance on his adversary and continue to act in his self-defense, until the danger or apparent danger is past, and to repel the unlawful attack of his assailant with whatever force may reasonably appear to him at the time to be necessary; but when it appears to the defendant that such danger or apparent danger, if any, ceases, then such right ceases." There is nothing in this case to call for a charge on the cessation of danger. The facts show that deceased was standing on the sidewalk at the corner of Ninth and Main streets in the city of Ft. Worth, and appellant approached and killed the deceased, firing one shot. The deceased seemed to have died almost immediately. The state's theory was that appellant walked across the street with a pistol in his hand, and walked up to the man and killed him. The defendant's theory is that he did not have his pistol in his hand; but, having been warned of the threats of the deceased, he had armed himself anticipating he might meet deceased at any time, and he would be ready to protect his life or his body from serious injury, and came rather unexpectedly upon the deceased and his divorced wife standing together, and as he approached deceased turned upon him with his hand in his overcoat pocket, where witnesses testified he carried his pistol, and began raising his hand from his pocket as if to draw a pistol, and as he made the second step towards appellant he fired one shot. So it will be seen from no standpoint of this evidence was the charge quoted authorized or required to be given. There was but one shot fired, which proved fatal, and the right of self-defense arose under those circumstances. There was no issue or question raised by the facts at any point calling for a charge on cessation of the right of self-defense, and there was no act on the part of defendant in that connec-

tion after this right ceased. Appellant did not undertake to shoot except the one shot.

[6] There is another criticism of the charge which is as follows: "It is your duty to determine from the evidence what was the standpoint of the defendant and in what light he did, in fact, view the situation." Just preceding this quotation, this language is also found: "In determining whether the defendant acted in his own necessary self-defense, it is immaterial whether the danger, if any, was real, whether in fact it existed, or whether it was merely apparent, and you will look to the evidence and consider the transaction from what you believe to have been the standpoint of the defendant and from no other standpoint." This charge was condemned in Simmons v. State, 55 Tex. Cr. R. 449, 117 S. W. 141; the opinion having been written by Judge Ramsey. This charge ought not to have been given. The jury must not look at this in the light of subsequent events, but as it appeared to defendant at the time. The criterion of self-defense in apparent danger is always as it appeared to defendant at the time he acted, not as viewed by the jury in the light of subsequent events. If the defendant believed at the time that his life was in danger and so acted, he would have the benefit of self-defense. It is not the criterion that the jury should settle the viewpoint of the defendant as developed on the trial, but it must be viewed by the jury as the defendant himself viewed it at the time of the homicide.

[7] There is another matter raised with reference to the self-defense theory. It is not the purpose of this opinion to go into the charge given by the court and requested charges by appellant and refused by the court, critically to discuss this question. It will be treated in a general way. The evidence discloses serious threats made by deceased against appellant, involving his life and bodily injury. One witness testified deceased said he would kill appellant within 24 hours. It is also in evidence that the deceased went armed and carried his pistol in the right-hand pocket of his overcoat and exhibited it in connection with his threats. There is evidence also of uncommunicated threats. Enough has been stated to show the two theories of the state and defendant with reference to the immediate facts of the homicide. Taking the self-defense theory from the defendant's standpoint, the deceased, as soon as he discovered him approaching, had started towards appellant with his hand in his right-hand overcoat pocket, where it was shown he usually carried his pistol, and stepped towards the appellant when appellant fired one shot. Under the defendant's theory, the deceased was the aggressor. Under the state's theory, this was not true. So the theories are exactly in contradiction, and flatly so. Appellant's evidence, and he is sustained by one or two eyewitnesses, placed the deceased as the aggressor. One or two witnesses testified for the state that there was no demonstration made by the deceased; that he was standing close to the corner of the sidewalk, or on the sidewalk, talking to the divorced wife of appellant, when appellant approached him, with a pistol in his hand, and shot him. Now, under this condition, the court should have given a charge with reference to uncommunicated threats. Uncommunicated threats are always admissible to determine, among other things, where that is an issue in the case, who began the difficulty, who was the aggressive party. Under appellant's theory, the deceased was the aggressive party and started towards him when he (defendant) had no intention of shooting him. The uncommunicated threats would tend to solve the question as to who was the aggressive party, the defendant or the deceased. This is raised by the appellant, and error is assigned upon the failure of the court to charge this, and to give the requested instructions, which also suggested this phase of the law. We think this is error. It is unnecessary to cite the authorities, as they are quite numerous.

The judgment is reversed, and the cause remanded.