## EX PARTE JONES POLK.

### No. 9201.   Delivered Jan. 21, 1925.

**Habeas Corpus—Bail Denied.**

Relator appeals from an order of the District Judge of Fisher County remanding him without bail on a charge of murder. Relator contends that the case presents an unexplained killing, with no evidence of express malice. The Court does not agree with him. In section 2096 Branch's Ann. P. C. is found this statement: "If a sudden killing is so deliberate, as to satisfy and come within the definition of express malice, it may be murder of the first degree, though there be no proof of motive." Many authorities are cited supporting the text. The decision of the trial court denying bail, while not conclusive on this court, is entitled to and is accorded great weight. Because there may be evidence in the record of mitigating circumstances, or raising the issue of self defense, or of an accidental killing, does not in every case require the overturning of the decision of a trial judge in denying bail.

Appeal from the District Court of Fisher County. Tried below before the Hon. Bruce W. Bryant, Judge.

Appeal from an order remanding relator without bail, upon a charge of murder.

The opinion states the case.

*T. Vard Woodruff,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—From an order of the district judge of Fisher County remanding relator without bail upon a charge of murder growing out of the killing of Jim Bob Largent relator appeals.

We gather from the testimony that Laura Holley is a negro woman who at the time of the homicide was running a rooming and eating house in the town of McCauley in Fisher County. Relator is a white man. Laura Holley was the principal witness for the state. Her testimony condensed is: That appellant came to her place of business on the night of the homicide between eight and nine o'clock and told a number of negroes who were in the room where he entered that he was "hi-jacking" and for them to hold up their hands, relator having a pistol at the time; that Ed Anderson was with him; that relator searched the negroes, then came to the room where witness was, secured a lamp, and with a number of other men went into a room where they engaged in gambling until late in the night; that after they came out of the room relator walked to the front part of the building and fired a shot into the ceiling, then walked back in

the kitchen and sat down in a chair. Several parties appear to have been in the kitchen at this time among them deceased, a boy about seventeen years of age. Laura Holley further says that after relator returned to the kitchen he said:

"Well, I am going to kill me some s— o- a b——;" got up out of his chair and shot deceased. There is no evidence in the record which shows any quarrel between relator and deceased, or which intimates that deceased was doing anything causing relator to shoot him. The only witness used by relator as to the incident of the killing was T. Cooper who with Ed Anderson was also charged with the killing of deceased. Cooper testified that after they came out of the room where the gambling was engaged in Ed Anderson fired the shot into the ceiling and not relator; that at the time the pistol was discharged which killed deceased the witness Laura Holley was not in the room where the shooting occurred but was in another room with Ed Anderson. He accounts for the shooting by the statement that relator was leaning back in a chair and his pistol slipped out of his pocket on to the floor; that both witness Cooper and relator reached for it; that as relator picked it up it was discharged accidentally, the shot striking deceased. He explains relator's action earlier in the night at the time he searched the negroes by stating that relator claimed to be an officer looking for a negro man who was supposed to have stolen a pistol. This witness Cooper also testified that after the shooting relator said to deceased: "Do you think I shot you a purpose?" to which deceased replied, "God knows, Jones, I know you didn't."

In determinnig if an accused charged with murder be entitled to bail we have found it necessary to inquire if express malice be shown. Ex parte Francis, 91 Texas Crim. Rep., 398, 239 S. W. 957; Ex parte Townsley, 87 Texas Crim. Rep., 252, 220 S. W. 1092. See also many authorities cited in those opinions. It appears to be relator's contention that this homicide occurred suddenly without premeditation and without motive, and that therefore evidence of express malice is absent. We cannot agree with relator in this respect. In Section 2096, Branch's Ann. P. C., is found this statement:

"If a sudden killing is so deliberate as to satisfy and come within the definition of express malice, it may be murder in the first degree though there be no proof of motive."

Among many authorities cited supporting the text will be found Snowberger's case, 58 Texas Crim. Rep., 530, 126 S. W. 884, and Wynn's case, 59 Texas Crim. Rep., 117, 127 S. W. 197. Specific malevolence against the party killed may be embraced in such an utter and reckless disregard of life as shows his slayer to be an enemy of all mankind; as when a man resolves to kill the next man he meets, and does kill him; or shoots into a crowd wantonly, not knowing whom he may kill. In such case it may well be said that he has malevolence

towards the particular person killed because he was within the scope of his malignity. (McCoy v. State, 25 Texas 33). This principle appears to be applicable in the present case. The State's evidence shows that relator had formed the design to kill some one and executed the design upon deceased. A decision of the trial court denying bail, while not conclusive on this court, is entitled to and is accorded great weight. Ex parte Hanks, 261 S. W. 1027; Ex parte Lebo, 88 Texas Crim. Rep., 435, 227 S. W. 187; Ex parte Sparks, 81 Texas Crim. Rep., 618, 197 S. W. 873; Ex parte Matlock, 18 Texas App. Rep., 227; Ex parte Beacon, 12 Tex. App. Rep., 318; Ex parte Moore, 5 Texas App. Rep., 103. Because there may be evidence in the record of mitigating circumstances, or raising the issue of self-defense, or of an accidental killing does not in every case require overturning of the decision of a trial judge denying bail. Ex parte Ross, 94 Tex. Crim. Rep., 313, 251 S. W. 235; Ex parte Good, 94 Texas Crim. Rep., 326, 251 S. W. 233; Ex parte Jones, 31 Texas Crim. Rep., 422, 20 S. W. 983; Ex parte Smith, 23 Texas App. Rep., 100, 5 S. W. 99; Ex parte Hanks (supra). The source of the evidence may be considered in determining whether the denial of bail was erroneous. The witness upon whom relator relies was his companion on the night of the homicide, and seems to be charged with being implicated in the killing.

We conclude that under all the facts before us we would not be justified in disturbing the order of the trial judge.

The judgment is affirmed.

*Affirmed.*