Tommy **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45156.

Court of Criminal Appeals of Texas.

Sept. 25, 1972.

Rehearing Denied Nov. 22, 1972.

Will Gray, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Donald L. Lambert, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for murder; the punishment, death.

The appellant's first ground of error alleges that the trial court erroneously admitted "the prejudicial testimony of Officer Shell relating to a prior and unconnected extraneous offense." We agree. The judgment is reversed for that reason.

The evidence shows the appellant killed George Ocanas without any apparent motive. At approximately 7:30 p. m. on Easter Sunday evening, March 29, 1970, five men, George Ocanas, Ceaser Vidurri, Raymond Vidurri, Abel Olmeda and Enrique Vidurri, were standing near a street in the neighborhood where Ocanas and the Vidurris resided. As they were discussing some family matters, a car drove up. The appellant was driving, and he was accompanied by two young women who also occupied the front seat of the car.

The appellant stopped near the five men, and got out of the car. The appellant got out of the car with a pistol in his hand and indicated that the five men should come around to the driver's side of the car. He asked the men if they wanted a ride. It is not entirely clear whether the question was directed to the whole group or to one member of the group. The repeated questions of whether the men or one of them wanted a ride were the only words uttered by the appellant. As the appellant held the pistol in a menacing position, one of the men said, "What is going on? We don't know you. What are you doing here?" The appellant again asked if they wanted a ride and as he sat down in his car he fired four or more shots in rapid succession. One shot hit and felled George Ocanas. As Ceaser Vidurri bent over to assist Ocanas, Vidurri was struck by a shot and Abel Olmeda was wounded by another shot. The appellant then drove his car away.

The two girls with the appellant remained in the car and they said nothing and nothing was said to them. The victims of the attack and others, who were close by and were witnesses, testified that they were not acquainted with the appellant and had not seen him before. They were unable to account for the appellant's acts. None of the five men who had been talking were armed.

Ocanas died as a result of the gunshot wound to the head.

The appellant did not testify. The appellant was identified by several witnesses and identity was not a contested issue.

After the defense had rested, the State called Officer Shell to testify. The jury was removed and out of their presence the nature of the officer's testimony was fully developed.

Defense counsel objected to the admission of such evidence because it was proof of an extraneous offense and not admissible on any issue of the case.

The State argued:

". . . this evidence is clearly admissible . . . it would be certainly relative on both points, intent and motive."

The objection of defense counsel was overruled. Officer Shell's testimony before the jury will be summarized in part and quoted in part. On November 27, 1969, Officer Shell was working an extra job at the Pan American Nightclub. He had just finished work at 12:00 a. m. and was on his way home. He was wearing his police officer's uniform and as he was getting in his car his attention was attracted to "a young girl that came across the street crying and said that someone hit her up the side of her head with a pistol . . . She pointed to a subject in a car that was parked across the street." The officer approached the car and observed

the appellant, Tommy Rodriguez, in the car with two girls. The officer then testified:

"A. Yes sir, I walked up to the car and he had his hand here, he stuck his hand in his coat here as I approached the car and as I walked up he looked at me and said, 'Do you want my driver's license?', and before I said anything I made a grab for his hand because I knew he had a gun, and when I did he pulled away and he then came out and twisted away from me, and I was afraid he was going to shoot me in the stomach so I rolled on down the side of the car trying to pull my automatic, and at this time he stepped out of the car, as I was around the back, raised up, and snapped the pistol at me a couple of times.

"Q. The gun didn't fire?

"A. No sir.

"Q. Did you hear it snap?

"A. Yes sir.

"Q. What occurred then?

"A. Then I got my gun out and went around behind the car, but I couldn't fire because there was a bunch of kids behind me, and he snapped his pistol at me a couple of more times and turned and ran behind the building.

"Q. As you were rolling to the back of his car he stepped out with the gun in his and snapped that gun at you?

"A. Yes sir.

"Q. The first time he snapped the gun at you were you on the ground still or were you up?

"A. I was standing up, I was trying to get away behind something.

"Q. You were running from him?

"A. Yes sir.

"Q. What position were you in the second time he tried to kill you?

"A. I was behind the car and I had my gun out but I still couldn't fire because of the people behind me and he snapped it at me a couple of more times and ran.

"Q. Where did he point the gun at when he tried to shoot at you?

"A. Directly at me.

"Q. Directly at you?

"A. Yes sir.

"Q. What did you do at that time?

"A. Well, I gave chase, but when I got to the back of the stand he disappeared somewhere.

"Q. Had you ever seen this man before in your life?

"A. No sir.

"Q. Do you know of any reason on God's Earth why he would try to kill you?

"A. No sir.

"Q. Had you said anything to this man to provoke him?

"A. No."

The jury was instructed that it could consider the testimony regarding the appellant having committed other offenses in determining the *motive* and *intent* of the appellant in the commission of the offense for which he was being tried.[1]

1. The court's full charge on this issue reads as follows:

"You are further instructed that if there is any testimony before you in this case regarding the Defendant's having committed offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the intent and motive of the Defendant, if any, in connection with the offense, if any, alleged against him in the indictment, and for no other purpose."

■ One of the exceptions to the general rule that an accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime or for being a criminal generally is that evidence which would show a motive is admissible even though it would also show the commission of a collateral or extraneous offense. Summers v. State, 464 S.W.2d 126 (Tex.Cr.App.1971); Stephens v. State, 147 Tex.Cr.R. 510, 182 S.W.2d 707 (1944); Stalcup v. State, 130 Tex.Cr.R. 119, 92 S.W.2d 443 (1936) and Miller v. State, 129 Tex.Cr.R. 166, 84 S.W.2d 459 (1935).

■■ The term motive is used to express different concepts.[2] As used here, motive refers to an emotion that would provoke or lead to the commission of a criminal offense. Evidence to show motive is the circumstantial evidence that would appear to cause or produce the emotion. When it is said that evidence going to show motive is admissible, it is meant that the circumstantial evidence is admissible that would appear to cause or produce the emotion that would in turn provoke or incite the commission of the criminal offense. See 1 Wigmore, Evidence, § 117 at 558 (3d ed. 1940) and 2 McCormick and Ray, § 1534 at 382 (2d ed. 1956).

■ Motive is not an essential element of a criminal offense. Therefore, motive need not be proved in order to establish the commission of the offense. Jones v. State, 153 Tex.Cr.R. 345, 220 S.W.2d 156 (1949); Holland v. State, 216 S.W.2d 228 (Tex.Cr.App.1949); Arocha v. State, 118 Tex.Cr.R. 391, 39 S.W.2d 1097 (1931); Ex parte Williams, 133 Tex.Cr.R. 346, 111 S.W.2d 266 (1937); Ex parte Polk, 99 Tex.

Cr.R. 106, 268 S.W. 464 (1925); Powell v. State, 59 S.W. 1114 (Tex.Cr.App.1900); 20 Tex.Digest Homicide ■

Evidence to show motive is merely one kind of evidence aiding in establishing proof of an alleged offense. McKinney v. State, 8 Tex.App. 626 (1880).

■ The prosecution may always offer evidence, if it is known to exist, to show motive for the commission of an offense because it is relevant as a circumstance tending to prove the commission of an offense.[3]

However, "The proposed testimony, to be admissible as proof of motive, must fairly tend to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense for which he is on trial. Somerville v. State, 6 Tex.App. 433; McKinney v. State, 8 Tex.App. 626; Phillips v. State, 22 Tex. App. 139, 2 S.W. 601; Plew v. State, Tex. Cr.App., 35 S.W. 366; Barkman v. State, Tex.Cr.App., 52 S.W. 69; Woodward v. State, 42 Tex.Cr.R. 188, 58 S.W. 135; Kirklin v. State, 73 Tex.Cr.R. 251, 164 S.W. 1016; Barnes v. State, 130 Tex.Cr.R. 547, 95 S.W.2d 112." 4 Branch's Ann.P. C.2d § 2055 at 364 (2d ed. 1956).

The State's theory throughout the trial of this case and on appeal is that there was *no motive* for the killing of George Ocanas.

We have not been cited any cases and a diligent search has revealed no case where it has been held that the absence or lack of motive in a particular case would authorize the admission of extraneous or collateral offenses in which there was an apparent absence or lack of motive.[4]

2. Wigmore says "It would be more conducive to clearness of thought if the word 'motive,' so misleading in its popular associations, could be abandoned altogether in discussing evidential questions." 1 Wigmore, Evidence, § 117 at 558 (3d ed. 1940).

3. On the other hand, the defendant may always offer evidence, if there is any,

to show the absence or lack of motive tending to prove his innocence.

4. When using the term "absence" or "lack of motive," it should be qualified by the word "apparent." There is some thought that a person does not do any act without some motive, either rational or irrational. The motive, however, may not be apparent. A person doing an act may

We hold that where the evidence, as in this case, fails to show an apparent motive for the killing, that would not be a basis for the admission of collateral or extraneous offenses committed apparently without motive. What would such evidence prove? It would prove no issue or element of the offense on trial. All that would be proved is that the defendant is bad and a criminal who commits offenses without an apparent motive.

Was the testimony of Officer Shell admissible on the issue of intent?

The appellant's intent to kill the deceased may be presumed from the shooting of the deceased at close range with a pistol, a deadly weapon per se. Schulz v. State, 446 S.W.2d 872 (Tex.Cr.App.1969); Dominguez v. State, 445 S.W.2d 729 (Tex.Cr.App.1969); Walker v. State, 440 S.W.2d 653 (Tex.Cr.App.1969) and see Article 45, Vernon's Ann.P.C.

The appellant offered no evidence rebutting that presumption such as testimony that the shooting was done accidentally. In this case, intent was not a contested issue. Evidence of extraneous offenses is admissible to show intent only when intent is an issue. Ford v. State, Tex.Cr.App., 486 S.W.2d 727 (1972); Shaw v. State, 479 S.W.2d 918 (Tex.Cr.App.1971); Jones v. State, 481 S.W.2d 900 (Tex.Cr.App.1972); Hafti v. State, 416 S.W.2d 824 (Tex.Cr. App.1967); Williams v. State, 215 S.W.2d 627 (Tex.Cr.App.1948); Gray v. State, 77 Tex.Cr.R. 221, 178 S.W. 337 (1915) and Bowman v. State, 70 Tex.Cr.R. 22, 155 S. W. 939 (1913).

Intent not being a contested issue in this case, it was error to admit the testimony of Officer Shell concerning an extraneous offense to prove intent.

The State relies upon and cites, among other cases, Gray v. State, 467 S.W.2d 474 (Tex.Cr.App.1971) and Parks v. State, 437 S.W.2d 554 (Tex.Cr.App.1969). These cases are inapplicable because the extraneous offenses were admitted where identity was a contested issue.

The appellant's remaining grounds of error need not be discussed as it cannot be anticipated that the circumstances upon which they are based will arise in a new trial.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

express a true or an untrue motive; other than that, circumstances must be looked to to determine his apparent motive. Many times, motive is not ascertainable.