IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1633-04






DANIEL D. GARCIA, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY





 Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and
Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Johnson, J., concurred. Price,
J., filed a dissenting opinion. Womack, J., did not participate.






 Appellant Daniel D. Garcia was convicted of murdering his wife and sentenced to 
ninety-nine years in prison. On appeal, Garcia argued that evidence of a prior act was
improperly admitted by the trial court. The court of appeals held that the trial court
committed harmful error in admitting the evidence and reversed the judgment of the trial
court. Garcia v. State, 150 S.W.3d 598 (Tex. App.-San Antonio 2004). We will reverse.

FACTS

 The victim, Lesa Garcia, was Appellant's estranged wife. The marriage had been
troubled for several years, and the couple had separated twice before the victim filed for
divorce. The cause of the first separation was the "car dumping" incident, which is the
prior bad act at issue in this case. The evening of the "car dumping" incident, Appellant
and Lesa and their two sons had driven to Appellant's parent's home in Leon Springs. 
After dinner with Appellant's family, Appellant, Lesa, and their two sons were driving
home when Appellant and Lesa began to argue about Appellant's desire for them to build
a house on his parent's land and move from their home in San Antonio onto the "family
compound." During the argument, Appellant pulled over on Loop 1604, unhooked
Lesa's seatbelt, pushed her out of the car, and drove away, leaving her on the side of the
road without her purse or cellular phone. She walked almost two miles to a grocery store
and called her sister to come pick her up. Lesa reported the incident to the San Antonio
Police Department the following week. 

 Appellant and Lesa were separated for the next two and a half months but then
reconciled and began to see a marriage counselor. The counselor testified at trial that the
"car dumping" incident was a frequent topic of discussion in the counseling sessions. He
also testified that at one session, more than a year after the incident, Appellant admitted
that he could get physical with Lesa if she nagged him. The next day, the counselor
called Lesa and suggested that she file for divorce and obtain a protective order. The
following week, Lesa hired an attorney and served Appellant with divorce papers,
including a court order that he vacate their home. Appellant moved out of the home he
and Lesa shared and stayed with his parents until he moved into a mobile home on his
family's compound. The next day, Lesa changed the locks on her home.

 For the next six months, Appellant and Lesa shared custody of their sons while
they were working on a divorce settlement. Several days before Lesa's murder,
Appellant, his attorney, Lesa, and her attorney met to discuss the property distribution,
and for the first time, Appellant indicated that he wanted custody of the boys. The next
day, Lesa asked Appellant if she could have the boys for the weekend, but he refused
because it was his weekend. (1) He also refused her request that he take the boys to a
birthday party the next day, claiming that he planned to take them to a family wedding. 
Instead of attending the wedding, Appellant and his sons spent that Saturday at the family
compound. The next day, Appellant's family met for their traditional Sunday dinner at
his parent's house. After dinner, Appellant took his sons back to the mobile home to get
them ready for bed. He stated that while walking from his parent's house to his mobile
home, he slipped and fell backward, bruising his right hand. When they arrived at the
mobile home, Appellant bathed his sons. He stated that when he was getting his oldest
son out of the tub, the boy slipped and scratched Appellant's chest.

 Appellant's sister, brother-in-law, and nephew, as well as one of his nephew's
friends left the family dinner and returned to their home, also on the family compound. 
Appellant's nephew and two of his teenaged friends were preparing to camp on the
property that night. Appellant's other sister and brother-in-law and their children watched
a movie after dinner and did not leave the family compound until around 1 a.m. to return
to their home, which was not on the family compound. The front gate of the compound
has a "dinger" which sounds inside Appellant's parent's house to alert them when
someone enters or exits the property. Appellant's parents testified that the last time they
heard the dinger was at around 1 a.m. when Appellant's sister and her husband and
children left to go home. They also stated that the dinger rings very loudly inside their
home, so they would have known if anyone had exited or entered the property that night.

One of Appellant's nephew's friends, who was camping on the property, testified that he
saw the headlights of a car enter the property and park at Appellant's mobile home. He
believed that it was around 3 a.m. but he was not wearing a watch. When he asked the
other boys who it was, Appellant's nephew replied, "Oh, it's just my uncle." 

 Later that morning, Appellant took his sons to daycare and went to work. That
same morning, Lesa failed to show up for work. Her friend and co-worker became
concerned and went to her home to check on her. Lesa's car was in the driveway, but
Lesa did not answer the doorbell. Her friend went around to the back of the house and
looked in a window. She saw Lesa's purse, but did not see Lesa. She also noticed that
the exterior house lights and the soaker hose were still on. (2) She then called their
employer and suggested that someone call Lesa's stepfather. Lesa's stepfather arrived at
Lesa's house and used his key to enter the front door, (3) setting off the alarm, which he
could not disable. At that point, he found Lesa's body at the foot of the stairs, near the
front door, and called 911. 

 The officers who arrived at the scene determined that there had been no forced
entry to the home and it did not appear that anything had been stolen. The evidence
technicians videotaped and photographed the scene and checked for fingerprints, hair, and
DNA evidence, and bagged Lesa's hands to preserve the evidence under her fingernails. 
Blood was found in the upstairs master bedroom, on the stairs, and around Lesa's body at
the bottom of the stairs. The medical examiner determined that she died from blunt-force
head trauma and strangulation.

 When detectives went to Appellant's office to inform him of his wife's death, they
noticed scratch marks on his neck. They took him to the police station to gather more
information about Lesa, but stopped the interview when Appellant asked for an attorney.
Detectives obtained a warrant to photograph the scratches on his neck and to gather hair
and blood samples for comparison to the evidence found at the crime scene. When the
detectives took Appellant to the hospital to gather the evidence, they noticed that his hand
was also bruised. After the photos, hair, and blood samples were taken, the detectives
took Appellant back to his parent's house. 

 The material found underneath Lesa's fingernails was tested and determined to be
consistent with Appellant's DNA. (4) A month after Lesa's death, Appellant was arrested
and charged with her murder.

 Prior to the trial, Appellant filed a motion in limine, stating that the car dumping
incident was inadmissible under Rules of Evidence (5) 401, 403, and 404(b); that it violates
the confrontation clause; and the testimony of the family members regarding the incident
necessarily involves hearsay. The State responded that because Lesa called her sister
crying, upset, and frightened as soon as she walked to the nearest telephone after being
left on Loop 1604, the testimony of Lesa's sister regarding what Lesa told her about the
incident fell under the excited utterance exception to the hearsay rule, which rebuts the
confrontation-clause objection. In response to the Rule 401, 403, and 404(b) claims, the
State argued that the car dumping incident was relevant to motive and intent. The trial
court denied the motion in limine and allowed Lesa's sister to testify regarding the car
dumping incident. A counselor with whom Lesa had met several times after the incident
also mentioned it in her testimony, (6) as did the psychologist to whom Lesa and Appellant
went for marriage counseling. After the marriage counselor testified, the trial judge gave
the jury a limiting instruction, stating that the testimony should be used only in
determining the intent or motive of the defendant, if any, in connection with the offense,
if any, alleged against him in the indictment in this case, and for no other purpose. The
State also elicited testimony regarding the car dumping incident on cross-examination of
Appellant and his mother. 

 The jury found Appellant guilty of murder, and he was sentenced to ninety-nine
years' imprisonment.

COURT OF APPEALS

 Appellant appealed, arguing that the evidence was legally insufficient to support
his conviction. The court examined the evidence in the light most favorable to the verdict
and held that a rational jury could have found the elements of the offense beyond a
reasonable doubt. 150 S.W.3d 598 at 606. Appellant also argued that the trial court
improperly admitted evidence of the car dumping incident in violation of Texas Rules of
Evidence 401, 403, and 404(b). The court first considered whether the evidence was
relevant to a material issue or was being used to prove the character of Appellant in order
to show that his actions at the time of the murder conformed to this character. The court
determined that the car dumping incident had no purpose other than to show that
Appellant acted violently in the past and acted in conformity with this violent character on
the night in question. Id. at 612. The court of appeals held that the trial court abused its
discretion in admitting the evidence and, after concluding that the error was harmful,
reversed the judgment of the trial court. Id. at 617.

ARGUMENTS OF THE PARTIES

 The State and Appellant filed petitions for discretionary review with this Court.
We refused Appellant's petition and granted the State's following seven grounds for
review: 

 1. Did the court of appeals err by failing to properly harmonize Texas
Rule of Evidence 404(b) with Texas Code of Criminal Procedure
38.36(a) as required by the Texas Court of Criminal Appeals in
Smith v. State, 5 S.W.3d 673 (Tex. Crim. App. 1999)?


 2. Should the Court of Criminal Appeals overrule Smith v. State, 5
S.W.3d 673 (Tex. Crim. App. 1999)? 


 3. Did the court of appeals err in holding that the evidence of an
incidence of previous domestic violence perpetrated by the Appellant
against the victim was introduced solely for character conformity
purposes when in fact it was relevant to motive, intent, state of mind,
and other purposes including the nature of the relationship between
the victim and defendant pursuant to Texas Rule of Evidence
404(b)? 


 4. Did the court of appeals err in holding that intent was not an issue in
this case in direct contravention of this Court's holding in Robbins v.
State, 88 S.W.3d 258 (Tex. Crim. App. 2002)? 


 5. Did the court of appeals err by misapplying Texas Rule of Evidence
403 and concluding that the probative value of the evidence of
previous domestic violence was substantially outweighed by the
danger of unfair prejudice in direct contravention with this court's
holding in Robbins v. State, 88 S.W.3d 258 (Tex. Crim. App. 2002)? 


 6. Did the court of appeals err in misapplying the appellate abuse of
discretion standard of review to reverse the trial court's decision to
admit evidence solely because the appellate court disagreed with that
decision in direct contravention of Robbins v. State, 88 S.W.3d 258
(Tex. Crim. App. 2002)? 


 7. Did the court of appeals err in misapplying the appellate harm
standard in Texas Rule of Appellate Procedure 42.2(b)?


 The State argues that the court of appeals erred in holding that the trial court
abused its discretion in admitting evidence of the car dumping incident. Because
evidence of ill will in cases involving family members is relevant for purposes other than
to show character conformity, prior acts which demonstrate ill will should be admissible. 
The State cites numerous cases in which the defendant repeatedly mistreated the victim
and committed acts of violence shortly before the crime, which were held to be
admissible to show the relationship between the defendant and the victim prior to the
crime. The State also contends that relationship evidence raises an inference that the
defendant had a motive to commit the offense and thus the evidence is admissible under
Rule 404(b). The State disagrees with the court of appeals's limited definition of motive,
under which previously manifested ill will, anger, and hostility would always be
propensity evidence and thus never admissible under Rule 404(b). Citing Rodriguez v.
State, 486 S.W.2d 355 (Tex. Crim. App. 1972), and Foy v. State, 593 S.W.2d 707 (Tex.
Crim. App. 1980), the State argues that prior acts are circumstantial evidence of the
defendant's emotion and are probative when the emotion is the motive for committing the
offense. In this case, the State contends that Appellant's feeling of hostility, anger, and ill
will toward Lesa was the motive for the murder, and the car dumping incident is evidence
of his emotions. 

 The State also disagrees with the court of appeals's interpretation of our holding in
Smith v. State, 5 S.W.3d 673 (Tex. Crim. App. 1999). Smith held that Rule 404(b) and
Article 38.36(a) (7) can be harmonized, giving effect to both. The court of appeals
interpreted this to mean that relationship evidence under Article 38.36(a) is admissible
only if it is probative of one of the factors listed in Rule 404(b), such as motive and intent. 
Because the court concluded that the car dumping evidence did not show Appellant's
motive for committing the charged offense, it held that the evidence was inadmissible
character evidence. The State points out that this is not harmonizing the rule and the
statute and giving effect to both, rather, it is ignoring Article 38.36(a) evidence and
considering only Rule 404(b) in determining that the evidence is inadmissible. Instead,
the State argues that the rule and the statute should be harmonized by allowing evidence
of prior acts which show the nature of the relationship between the accused and the
victim, when the nature of the relationship is relevant to a material issue in the case. 

 Finally, the State argues that the probative value of the car dumping incident is not
substantially outweighed by the danger of unfair prejudice. Because the car dumping
incident showed Appellant's ill will and hostility toward his wife, the evidence was
probative of Appellant's motive for the charged offense. The incident also explains other
factors affecting their relationship, such as the separation and the marriage counseling. 
According to the State, there is little chance that the jury was impressed in an irrational
way by this evidence or was distracted away from the charged offense by the testimony. 
And, although the incident was mentioned by several witnesses, it did not take a great
deal of time to develop the evidence. Because motive was a disputed issue in this case,
the State had a great need for this evidence to show Appellant's hostility toward Lesa, as
well as to show why they separated, why they sought marriage counseling, and why they
ultimately divorced. According to the State, the car dumping incident tied all of this
together and refuted Appellant's claim that their divorce was amicable.

 Appellant argues that the cases cited by the State are distinguishable because they
involve repetitive, violent acts that are contemporaneous with and similar to the charged
offense. Appellant also claims that the evidence had little probative value and the State's
stress on the evidence caused unfair prejudice. Appellant agrees with the court of appeals
that the car dumping incident was not probative of motive or intent, and was not relevant
to any material issue in the case. In the cases cited by the State, the prior bad acts are
admissible because they are probative of one of the other purposes listed in Rule 404(b)
and meet the relevance and prejudice requirements of Rules 401 and 403. In this case,
Appellant argues that these requirements are not met. 

 Appellant asserts that the State's emphasis on the car dumping incident implied
that it was the cause of the murder, rather than the cause of the divorce. And, the State's
repeated presentation of testimony regarding the incident was to show that Appellant was
violent and therefore acted in conformity with his violent character and murdered Lesa,
which is exactly what Rule 404(b) forbids. Appellant argues that the State made
Appellant's state of mind an issue because the circumstantial evidence in the case was
weak, consisting of the testimony of Appellant's nephew's friend that he saw a car arrive
at Appellant's mobile home that night; Appellant's DNA found under Lesa's fingernails;
and the scratch on Appellant's chest and bruise on his hand, for all of which the defense
offered alternative explanations. Because of this, the jury was forced to consider
Appellant's character in order to prove his propensity to commit the offense.

 Finally, Appellant argues that there is no reason to revisit Smith because the court
of appeals held that Rules 403 and 404(b) rendered this Article 38.36(a) relationship
evidence inadmissable, properly giving effect to both the Rule and the statute. 


ANALYSIS

 Article 38.36(a) states that, "In all prosecutions for murder, the state or the
defendant shall be permitted to offer testimony as to all relevant facts and circumstances
surrounding the killing and the previous relationship existing between the accused and the
deceased, together with all relevant facts and circumstances going to show the condition
of the mind of the accused at the time of the offense." The nature of the
relationship-such as whether the victim and the accused were friends, were co-workers,
were married, estranged, separated, or divorcing-is clearly admissible under this Article. 
However, in some situations, prior acts of violence between the victim and the accused
may be offered to illustrate the nature of the relationship. These specific acts of violence
must meet the requirements of the Rules of Evidence in order to be admissible. Rule
404(b) deals with prior acts of violence and specifically instructs courts regarding the
admissibility of such evidence. We held in Smith that Article 38.36(a) and Rules 403 and
404(b) can be applied congruously. 5 S.W.3d at 677. The fact that Article 38.37 lists the
specific offenses for which evidence of extraneous offenses or acts are admissible without
having to meet the requirements of Rule 404 indicates that other offenses, such as the
murder in the case before us, are subject to the requirements of Rule 404. And, although
Rules 403 and 404 limit the admissibility of some Article 38.36(a) relationship evidence,
this does not mean that the statute and the Rules are in conflict with each other. It simply
means that the State is prohibited from presenting evidence if the probative value is
substantially outweighed by unfair prejudice, confusion of the issues, misleading of the
jury, considerations of undue delay, or needless presentation of cumulative evidence. The
State is also prohibited from presenting evidence for the sole purpose of showing that the
accused acted in conformity with his bad character and murdered the victim. While Rule
404(b) limits the admissibility of specific acts used to show only the defendant's
character, and may keep a prosecutor from trying the case not on the charged offense but
on the past acts of the accused, it certainly does not block the admission of all relationship
evidence. 

 We generally assume that each word and phrase in a statute has meaning and
should be given effect, if possible. See Nguyen v. State, 1 S.W.3d 694, 696 (Tex. Crim.
App. 1999); Dowthitt v. State, 931 S.W.2d 244, 258 (Tex. Crim. App. 1996). While this
standard of construction has traditionally been applied to the interpretation of statutes
rather than court-promulgated rules, (8) it makes sense to consider the plain language of a
rule as well. See Donovan v. State, 68 S.W.3d 633 (Tex. Crim. App. 2002). See also
Robbins v. State, 88 S.W.3d 258, 262 (Tex. Crim. App. 2002) (stating that it is important
to remember that each word in a rule is significant). Rule 404(b) says that evidence of
other crimes, wrongs or acts may be "admissible for other purposes, such as. . ." and then
lists examples of purposes for which the evidence may be admissible. Based on the clear
language of the Rule, this list is not exhaustive. If it were intended for the Rule to allow
an exception only for proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident, then it would not have included the phrase
"other purposes, such as." As a result of this language, it is clear that there are additional
"other purposes" for which evidence of prior acts may be admitted. For example, in cases
in which the prior relationship between the victim and the accused is a material issue,
illustrating the nature of the relationship may be the purpose for which evidence of prior
bad acts will be admissible. In Smith, we noted that "evidence will be relevant to a
material issue if the purpose for which the party seeks to have it submitted tends to make
'the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.' What issues are
material will depend on the theories of the prosecution and the defense." 5 S.W.3d at 679
n. 13. (citations omitted).

 The court of appeals determined that the car dumping incident was not probative
of Appellant's motive for murdering his wife and that intent was not a material issue in
the case. Therefore, the court concluded that the evidence was offered for the sole
purpose of showing that Appellant had a violent character and acted in conformity with
that character in murdering Lesa. However, the court failed to consider that in this case,
the relationship between the Appellant and the victim was itself a material issue. The car
dumping incident was relevant to circumstances surrounding their relationship
immediately preceding the murder, i.e., that they had separated, attempted to reconcile,
and sought marriage counseling, but instead were in the process of divorcing. The court
of appeals failed to consider that the circumstances surrounding the relationship at the
time of the killing is relevant evidence under Article 38.36(a) and the car dumping
incident is admissible under Rule 404(b) for the purpose of illustrating the nature of their
relationship. 

 In Robbins, 88 S.W.3d 258, we held that because the defense made intent an issue
by presenting the theory that the injuries to the victim at the time of her death were caused
by efforts to resuscitate her, evidence of previous injuries the victim suffered while she
was in the appellant's care was material to that issue and admissible to rebut the defense
theory. However, we pointed out that a simple plea of not guilty does not put intent at
issue in each case. Because Appellant in this case did not put intent at issue through
means such as the presentation of defense theories or vigorous cross-examination, we
disagree with the State's argument that the decision of the court of appeals on the issue of
intent conflicts with our holding in Robbins.

 We also considered in Robbins whether the probative value of the admitted
evidence was substantially outweighed by the danger of unfair prejudice under Rule 403. 
As we stated earlier in the context of Rule 404(b), we assume that each word in the rule is
significant and should be given effect if possible. Id. at 262. Thus, when determining
whether evidence is admissible under Rule 403, we do not consider just whether the
evidence is more prejudicial than probative, we consider whether the probative value is
substantially outweighed by the danger of unfair prejudice. Id. The purpose in excluding
relevant evidence under Rule 403 is to prevent a jury that has a reasonable doubt of the
defendant's guilt in the charged offense from convicting him anyway based solely on his
criminal character or because he is generally a bad person. Id. at 263. We held in
Robbins that there was no reason to believe that the jury had reasonable doubt on the
charged offense but convicted the appellant based on the prior bad act evidence. 
Similarly, in this case, there is no reason for us to believe that the jury had reasonable
doubt that Appellant murdered Lesa but convicted him anyway based on the evidence of
the car dumping incident. As we stated, the evidence was probative of the relationship
between Appellant and Lesa, and was necessary to tie together the events beginning with
their first separation, including the subject matter of their counseling sessions, which
ultimately explained why Lesa filed for divorce. Finally, any potential prejudice was
diminished by the trial court's limiting instruction and instruction to disregard. Because
the court of appeals improperly disregarded the probative value of the car dumping
evidence, its Rule 403 balancing test was inevitably skewed. Therefore, the court of
appeals erred in holding that the probative value of the car dumping incident was
substantially outweighed by the danger of unfair prejudice. 

 An appellate court is not free to reverse a lower court's decision simply because it
disagrees with that decision. While the court of appeals may have disagreed with the trial
court's determination that the car dumping evidence was admissible, the court of appeals 
should not have reversed the trial court unless the decision of the trial court was outside
the zone of reasonable disagreement. Because the car dumping incident was admissible
under Rule 404(b) for the purpose of explaining the circumstances surrounding the
divorce, which was relevant to the nature of their relationship at the time of the offense,
the trial court's decision to admit the evidence under Article 38.36(a) was not outside the
zone of reasonable disagreement. The court of appeals misapplied the appellate harm
standard of review by reversing the decision of the trial court simply because it disagreed
with that decision. 

CONCLUSION


 The court of appeals erred in holding that the car dumping incident was introduced
solely for character conformity purposes and in failing to consider that the evidence had
probative value to explain the nature of the relationship between Appellant and Lesa at
the time of the offense. Additionally, as a result of disregarding this evidence, the court
of appeals' Rule 403 analysis was flawed. 

 Because we conclude that the trial court did not commit error, there is no need for
us to consider the court of appeals' application of the appellate harm standard. The
decision of the court of appeals is reversed, and the cause is remanded for consideration
of the remaining issues.

 Meyers, J.


Delivered: June 28, 2006

Publish

1. Testimony indicated that Appellant and Lesa had agreed several weeks earlier to switch
weekends so that Lesa could have the boys while her brother was in town visiting, which resulted
in confusion regarding whose weekend it was to have the children.
2. Lesa's next door neighbor testified that she had seen Lesa in her back yard watering her
lawn at around 9 p.m. the night before. 
3. Lesa's stepfather testified that he used his key to open the button lock on the door knob,
but could not remember whether the deadbolt on the door was locked. 
4. At trial, Appellant argued that because he had lived in the house where Lesa was
murdered, it would be normal for his DNA to be in the carpet. So, if Lesa's bloody hands were
dragged across the floor when she was murdered, then some of his DNA from the carpet could
have stuck under her fingernails. The medical examiner, however, testified that there were no
carpet fibers under Lesa's fingernails. 
5. All subsequent references to Rules refer to Texas Rules of Evidence.
6. The judge gave the jury an instruction to disregard the counselor's testimony regarding
the incident. 
7. All subsequent references to Articles refer to Texas Code of Criminal Procedure.
8. The legislature conferred rule-making power upon this Court to promulgate the Rules of
Criminal Evidence in 1985. In 1998, this Court and the Supreme Court adopted identical Rules
of Evidence.