In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00153-CV
______________________________


JACK PIERCE, Appellant
Â 
V.
Â 
JOHN T. (JAKE) HOLIDAY, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 338-99


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Ross, Carter, and Grant,* JJ.
Opinion by Justice Grant
*Ben Z. Grant, Justice, Retired, Sitting by Assignment


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Jack Pierce sued John T. (Jake) Holiday for injuries Pierce allegedly sustained while
cutting hay on Holiday's farm. The trial court granted Holiday's Motion for Partial Summary
Judgment and later granted Holiday's full summary judgment motion. Pierce appeals the
trial court's granting of summary judgment. 
Â Â Â Â Â Â Â Â Â Â Pierce contends on appeal the trial court erred in granting summary judgment
because he was not, as Holiday had claimed, a dual capacity employee. (Holiday had
argued before the trial court that Pierce's status as a dual capacity employee made him
ineligible for worker's compensation benefits under the Texas Workers' Compensation
Act.) Pierce further contends on appeal that a question of fact remains as to whether
Holiday was negligent, and thus the trial court erred by granting summary judgment. 
Â Â Â Â Â Â Â Â Â Â Before we address the trial court's granting of summary judgment, we must address
two other issues raised by the parties' briefs on appeal. First, the parties have
misconstrued this case as one involving workers' compensation and the theory of a dual
capacity employee. The heart of this case concerns neither issue for several reasons: 
(1)Â farm and ranch employees are generally excluded from coverage under the Texas
Workers' Compensation Act (the Act), Tex. Lab. Code Ann. Â§Â 406.091(a)(3) (Vernon 1996);
(2) Pierce did not seek worker's compensation benefits under the Act, nor did he seek
recovery through the Workers' Compensation Board; and (3) Pierce's original petition (and
each amended petition thereafter) clearly sought damages for injuries in negligence. 
Â Â Â Â Â Â Â Â Â Â Second, in his Motion for Partial Summary Judgment, Holiday alleged he should
prevail because Pierce failed to plead any facts supporting his claim that Holiday was a
nonsubscriber under the Act, and, to the contrary, the facts show Holiday is exempt from
being required to carry workers' compensation insurance. Further, because Holiday is
exempt from the Act, and because Pierce was performing duties as an agricultural
employee, Pierce cannot avail himself of the Act's abrogation of the common-law defense
of contributory negligence. In response, Pierce contended he was not a "dual capacity"
employee, but was instead injured during a temporary departure from his normal duties as
an employee of Holiday's dirt-working business. 
Â Â Â Â Â Â Â Â Â Â The pleading and burden of proof in establishing whether an employer has
subscribed to workers' compensation insurance is on the employer. An employer who
carries workers' compensation insurance may assert, as an affirmative defense, the fact
that an employee's work-related injuries are solely compensable under the Act. See, e.g.,
Montemayor v. Chapa, 61 S.W.3d 758 (Tex. App.âCorpus Christi 2001, no pet.) (affirming
the award of summary judgment for temporary employment agency under the "borrowed
servant" doctrine because plaintiff had obtained workers' compensation benefits from the
employer that plaintiff worked for at the time of the accident). Because an employer's
status as a subscriber to workers' compensation is an affirmative defense, the duty is on
the employer/defendantânot the employee/plaintiffâto plead and prove such facts. Tex.
R. Civ. P. 94. The wisdom behind this pleading rule is that the employer/defendant is in
the best position to know such a fact and is best able to marshal the necessary evidence
in support thereof. 
Â Â Â Â Â Â Â Â Â Â Furthermore, the record in this case shows Pierce did offer evidence Holiday was
a nonsubscriber. In his deposition, Pierce stated that Holiday had admitted he did not carry
insurance. 
Â Â Â Â Â Â Â Â Â Â We now turn to the real issue on appeal: whether the trial court erred by granting
Holiday's motion for summary judgment. There are two types of summary judgment: 
traditional and no-evidence. Tex. R. Civ. P. 166a(c), (i). Holiday sought summary
judgment on both grounds. The trial court's order did not explain why it granted summary
judgment, nor did it specify whether it granted a traditional or a no-evidence summary
judgment. Therefore, we will analyze each type of summary judgment to determine if the
trial court was correct under either theory. See Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex.
App.âCorpus Christi 2003, no pet.); McKillip v. Employers Fire Ins. Co., 932 S.W.2d 268,
270 (Tex. App.âTexarkana 1996, no writ).
A. Traditional Summary Judgment
Â Â Â Â Â Â Â Â Â Â In a traditional motion for summary judgment, "the moving party must establish that
no genuine issue of material fact exists and that it is entitled to judgment as a matter of
law." Youngblood v. U.S. Silica Co., 130 S.W.3d 461, 464 (Tex. App.âTexarkana 2004,
pet. filed). "Summary judgment for a defendant is proper when the defendant negates at
least one element of each of the plaintiff's theories of recovery or pleads and conclusively
establishes each element of an affirmative defense." McGowen v. Huang, 120 S.W.3d
452, 457 (Tex. App.âTexarkana 2003, pet. denied). On appeal, we must review the trial
court's judgment by examining the evidence in the light most favorable to the nonmovant,
disregarding any contrary evidence or inferences. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548â49 (Tex. 1985).
Â Â Â Â Â Â Â Â Â Â Pierce's original petition claimed Holiday was liable for damages under six different
theories of negligence: (a) Holiday failed to properly train Pierce to use the farm
equipment; (b) Holiday failed to provide proper equipment; (c) Holiday failed to keep his
premises in such condition as to provide a safe working environment; (d) Holiday failed to
warn Pierce of a dangerous condition on the premises; and, alternatively, (e) Holiday failed
to inspect the premises, and (f)Â Holiday failed to warn Pierce, as an invitee, of a dangerous
condition. We collectively discuss Pierce's final four causes of action as premises liability
claims.
Â Â Â Â Â Â Â Â Â Â Holiday's motion for traditional summary judgment contended the evidence
conclusively disproved an element of Pierce's premises liability claims. The motion did not,
however, attack Pierce's claim for receiving inadequate training or his claim that he was
provided inadequate equipment. Thus, to the extent Holiday did not attack all of Pierce's
causes of action, the trial court should not have granted summary judgment as to all of
Pierce's claims.
Â Â Â Â Â Â Â Â Â Â We now turn to Holiday's motion for summary judgment regarding Pierce's premises
liability claims. An invitee must prove a premises liability claim by showing (1) that the
defendant had actual or constructive knowledge of some condition on the premises,
(2)Â that the condition posed an unreasonable risk of harm, (3) that the defendant failed to
exercise reasonable care to eliminate or reduce the risk of that harm, and (4) that the
defendant's failure to use such care proximately caused the invitee's injury. Brookshire
Grocery Co. v. Taylor, 102 S.W.3d 816, 820 (Tex. App.âTexarkana 2003, pet. filed). 
According to Holiday, the testimony of Darwin Gunby and Dwayne Brown


 conclusively
show that Holiday had no actual or constructive knowledge whether there were any "holes
or washouts" in the field. 
Â Â Â Â Â Â Â Â Â Â Gunby, however, testified he could not remember whether he had bailed any hay
during the season when Pierce was allegedly injured. Nor did he specifically testifyâand
his testimony does not otherwise suggestâhe had specific knowledge that no holes or
washouts existed in the field on the date of Pierce's alleged injury. Instead, Gunby testified
he did not remember coming across any large hole on Holiday's property, but no time
frame was attached to this claim. And Gunby conceded that Holiday owned equipment
which he could have used to fill in any hole that might have existed. Further, Gunby's
testimony reflects only his personal knowledge; his testimony says nothing of what Holiday
did or did not know regarding the field's condition before Pierce's alleged injury.
Â Â Â Â Â Â Â Â Â Â Brown also testified he had not ever had any problems with washouts in the field
and had never noticed any holes in the field. But he acknowledged that if there had been
a big hole on the property somewhere, Holiday had the capability of filling in the hole. 
Brown did not specifically state whether Holiday had actual or constructive notice of any
dangerous condition in the field on the date of Pierce's alleged injury.
Â Â Â Â Â Â Â Â Â Â Viewing the evidence in the light most favorable to Pierce, we cannot say the
evidence before the trial court conclusively disproved the foreknowledge element of
Pierce's premises liability claims. Further, Holiday's motion for traditional summary
judgment did not address Pierce's other causes of action regarding inadequate training and
equipment (claims a and b). See McGowen, 120 S.W.3d at 457 (summary judgment is
proper only if the defendant conclusively disproves an element of each of the plaintiff's
causes of action). Accordingly, the trial court should not have granted a full and final
summary judgment in Holiday's favor based on his motion for traditional summary
judgment.
B. No-Evidence Summary Judgment
Â Â Â Â Â Â Â Â Â Â "A no-evidence motion for summary judgment asserts that there is no evidence of
one or more essential elements of a claim on which the adverse party will bear the burden
of proof at trial." Alaniz, 105 S.W.3d at 344 (citing Tex. R. Civ. P. 166a(i); Scripps Tex.
Newspapers, L.P. v. Belalcazar, 99 S.W.3d 829, 840 (Tex. App.âCorpus Christi 2003, pet.
denied)). In reviewing a no-evidence summary judgment, "the initial question is whether
there is some evidence to support each element of the cause of action." Taylor v. Wood
County, 133 S.W.3d 811, 815 (Tex. App.âTexarkana 2004, no pet.). 
Â Â Â Â Â Â Â Â Â Â In his deposition, Pierce testified that he did not know whether Holiday had any
foreknowledge of any holes or washouts in the field. He also admitted that the hole in
question might have been difficult to see because the hay had grown so tall. A reasonable
conclusion from this testimony might be that even if Holiday had tried to find a hole in the
field, the hay might have obscured the hole from view. Pierce testified a recent rain might
have caused the washout. Brown admitted in his testimony he knew there were often
gopher holes in the field. However, there was no summary judgment proof support that
Holiday knew or should have known of the hole Pierce was alleged to have hit. There also
was no showing that Holiday drove the tractor into a gopher hole, and there was no
showing that Holiday knew of any gopher holes. Pierce's testimony suggests the hole may
have been caused by a recent rain, but this testimony does not impute any knowledge of
the hole's existence to Holiday and does not raise any evidence that Holiday should have
known of its existence. Therefore, because the summary judgment proof does not raise
some evidentiary support for this necessary element of the plaintiff's premises liability
cause of action, the trial court's granting of the no-evidence summary judgment on the
premises liability portion of this case should be upheld. 
Â Â Â Â Â Â Â Â Â Â Holiday's motion for no-evidence summary judgment, however, contended only that
there was no evidence about the element of Holiday's foreknowledge of the alleged
dangerous condition that caused Pierce's injury. Pierce's no-evidence motion for summary
judgment did not attack Pierce's causes of action regarding inadequate training and
equipment. Thus, the trial court should not have granted a no-evidence summary
judgment in favor of Holiday on all of Pierce's claims when Holiday's no-evidence motion
for summary judgment did not attack all of Pierce's causes of action.
Â Â Â Â Â Â Â Â Â Â For the foregoing reasons, we affirm the trial court's granting of no-evidence
summary judgment on the premises liability theory, and we reverse and remand the case
for further proceedings on the other alleged liability theories.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Ben Z. Grant*
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

*Justice, Retired, Sitting by Assignment

Date Submitted:Â Â Â Â Â Â June 9, 2004
Date Decided:Â Â Â Â Â Â Â Â Â November 22, 2004



here in May of 1998, was
Mr. Bowman still alive.

 

 A. Yes, he was.


 Q. It's Margaret - .


 A. And he was sick with cancer, too.


 Q. Is that Margaret Bowman's husband?


 A. Yes, he is.


 Q. Were similar allegations that have been made against Dale been made
against Mr. Bowman?


 A. Yes, it was.


 Q. Okay. If you know, whatever happened with that claim?


 [Prosecutor]: Your Honor.


 A. Nothing.


 [Prosecutor]: Your Honor, again, I'm going to have to object
as to what the basis of her knowledge is. I'd like to go into, you know -- but I'm
going to withdraw it now.


Any other evidence regarding abuse by others against the complainant came out during Abshire's
rebuttal after Woods's testimony had already been admitted. It cannot, therefore, provide a basis for
admitting her testimony.

 The fact is that Abshire's defense was that he did not have an opportunity on May 10, 1998,
to molest the complainant and that the proximity of his relatives' houses to his house and the access
they had to his house reduced the likelihood that he could have repeatedly abused the complainant. 
Woods's testimony was not relevant to rebut that defense because the abuse she alleged occurred
over ten years earlier, when the situation in the Abshire house was different.

 In its brief, the State contends Woods's testimony was admissible to show motive, identity,
and a signature-type crime. Though the majority does not address the State's contentions, a close
examination of the arguments demonstrates that Woods's testimony was not admissible under any
of those theories.

 The State points to Woods's testimony that Abshire told her it was his responsibility as her
father to teach her about sex as demonstrating his motive for molesting the complainant. Motive is
not an essential element of a crime, but evidence of motive is always admissible because it is
relevant as a circumstance tending to prove the commission of an offense. Bush v. State, 628 S.W.2d
441, 444 (Tex. Crim. App. 1982); Rodriguez v. State, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972). 
For evidence to be admissible as proof of motive, it must tend to raise an inference that the accused
had a motive to commit the alleged offense for which he is on trial. Bush, 628 S.W.2d at 444;
Rodriguez, 486 S.W.2d at 358. Other courts have observed that the admissibility of extraneous
offense evidence to prove motive is usually required to relate to other acts by the accused against the
complainant of the crime for which the accused is presently being tried. Zuliani v. State, 903 S.W.2d
812, 827 (Tex. App.Austin 1995, pet. ref'd) (citing Foy v. State, 593 S.W.2d 707, 708-09 (Tex.
Crim. App. [Panel Op.] 1980)); see also Powell v. State, No. 12-98-00049-CR, 2000 WL 760988,
at *3 n.3 (Tex. App.Tyler May 31, 2000, pet. granted); Lazcano v. State, 836 S.W.2d 654, 660
(Tex. App.El Paso 1992, pet. ref'd).

 The State offered Woods's testimony for the purpose of supplying a motive for molesting the
complainant. However, the complainant's testimony did not raise the issue of motive. In addition,
the relevance of this evidence is lessened by the fact that the complainant is Abshire's niece and not
his daughter. Woods testified Abshire told her it was his responsibility as her father to teach her
about sex. Assuming this was his motive for molesting Woods, there is no indication his motive
would apply to members of his extended family.

 The State also contends Woods's testimony is relevant to show Abshire's intent. The State
accused Abshire of intentionally or knowingly causing the complainant's sexual organ to contact his
sexual organ. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(iii) (Vernon Supp. 2001). However,
Abshire did not specifically contest the intent element; rather, he defended himself on the basis that
he did not commit the crime. Thus, the complainant's testimony supplied the intent element for the
offense, and intent was not a material issue in the case. Even if it were, Woods's testimony would
not show Abshire's intent to molest the complainant apart from the evidence's tendency to show he
acted in conformity with his character.

 Finally, the State contends Woods's testimony was relevant to show a signature-type crime. 
A claim that an extraneous offense is relevant to show a signature-type crime is often a shorthand
way of saying it is relevant to show the identity of the perpetrator of the charged offense, his modus
operandi, or the absence of a mistake or accident. See Taylor v. State, 920 S.W.2d 319, 322 (Tex.
Crim. App. 1996); Owens v. State, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992). When an
extraneous offense is offered as emblematic of a signature-type crime, the common characteristics
or the device used in each offense must be so unusual and distinctive as to be like a "signature." 
Collazo v. State, 623 S.W.2d 647, 648 (Tex. Crim. App. [Panel Op.] 1981). Signature features must
consist of more than mere repeated commissions of the same class of crimes, such as burglaries or
robberies. Owens, 827 S.W.2d at 915.

 There are elements of Woods's testimony that would, under certain conditions, provide a
basis for asserting a signature-type crime. The complainant did not testify about any of these
signature elements that was similar to Woods's testimony. She testified only that Abshire assaulted
her. Woods's testimony is nothing more than a repeated instance of the aggravated sexual assault
of a child crime for which Abshire was on trial.

 Further, as mentioned previously, extraneous offense evidence must be relevant to establish
a fact of consequence in the case, apart from establishing character conformity. Rankin v. State, 974
S.W.2d 707, 709-10 (Tex. Crim. App. 1996). Here Abshire's identity, his modus operandi, and
whether the offense was a mistake or accident were not in issue. The complainant identified Abshire
as the perpetrator, and Abshire defended himself on the basis that he did not commit the offense. 
Woods's testimony was relevant to show nothing more than that Abshire acted in conformity with
his character. Thus, the trial court erred in overruling Abshire's objection to Woods's testimony
under Rule 404(b).

 Abshire was harmed by the error of admitting Woods's testimony. Nonconstitutional error
is harmless when it does not affect the defendant's substantial rights. Tex. R. App. P. 44.2(b). A
substantial right is affected when the error had a substantial and injurious effect or influence on the
jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Reversal is not required
if, after reviewing the record as a whole, the appellate court has a fair assurance that the error did not
influence the jury's verdict or had only a slight effect. Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998).

 The State presented medical evidence that the complainant had been repeatedly sexually
abused. However, the evidence also showed that the complainant told both a sexual assault nurse
examiner and Fountain, whom the evidence showed was a convicted felon, that she had been
sexually abused by two men, her father and Dale Abshire. The complainant repeated her earlier
statements in her testimony before the jury. Thus, the State's case relied on the complainant's
credibility, while Abshire's case relied on his assertions that he did not molest the complainant. 


 A jury would unlikely have judged Woods's testimony to discredit Abshire and would have
been influenced to have tried him as a criminal. Generally, this influence on the present case was 
harmful error. I respectfully dissent.



 Ben Z. Grant

 Justice


Date Submitted: January 4, 2001

Date Decided: November 28, 2001


Publish